Irwin B. BLATT and Esther Blatt, Plaintiffs,

v.

DEAN WITTER REYNOLDS INTERCA-PITAL INC., Dean Witter Reynolds Organization Inc., and Intercapital Liquid Asset Fund Inc., Defendants.

No. 79 Civ. 5489 (MEL).

United States District Court, S.D. New York.

July 1, 1983.

Pomerantz, Levy, Haudek & Block, Harry W. Jacobs, New York City, for plaintiffs; Stanley M. Grossman, Stephen P. Hoffman, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendants Dean Witter Reynolds Intercapital, Inc. and Dean Witter Reynolds Organization, Inc.; Marvin Schwartz, Mark F. Rosenberg, New York City, of counsel.

Gordon, Hurwitz, Butowsky, Baker, Weitzen & Shalov, New York City, for InterCapital Liquid Asset Fund Inc.; David Butowsky, New York City, of counsel.

LASKER, District Judge.

This derivative action was brought by shareholders of InterCapital Liquid Asset Fund Inc. ("the Fund") against Dean Witter Reynolds InterCapital Inc. ("the Manager") and its parent Dean Witter Reynolds Organization Inc. ("Dean Witter") claiming that the management fees charged to the Fund by the Manager were excessive and disproportionate to the services rendered and thereby violated the Investment Company Act of 1940 as amended, 15 U.S.C. § 80a–1 et seq. ("the Act"). The action has heretofore been settled with approval of the Court.

Plaintiffs' counsel now move, on proper notice to all concerned, for allowance of attorneys' fees of $300,000, payable by the Manager (not the Fund or its share holders) in accordance with the settlement agreement in two equal annual installments, together with disbursements of $2,889.71 payable with the first installment.

I

There are approximately 640,000 shareholders of the Fund, 12 of whom have filed objections to the requested allowance.

The settlement which has been approved provides that the Manager will submit to the Board of Directors of the Fund no later than the next annual meeting a proposed new management contract including a reduced schedule of fees to be paid to the Manager. At the present size of the Fund—approximately $9.5 billion—the reduction in annual Manager's fees would be $312,000. The settlement agreement provides that the savings in fees charged to the Fund shall be guaranteed to be no less than $300,000 per annum for five years, so that the total minimum gained by the Fund as a result of this suit will be $1,500,000. This analysis of the propriety of the fee application is based on the assumption that such a saving, and no more, will be achieved, although the savings over a period of time may in fact turn out to be significantly greater than $1.5 million.

The settlement also provides that the Manager shall pay plaintiffs' attorneys' fees and expenses to the extent that those charges are approved by the Court. In other words, the Fund's gain of $1.5 million or more resulting from this litigation will not be reduced by any amount on account of an award of attorneys' fees and expenses.

II

In judging the reasonableness of the fee application, the services rendered by counsel, and the hours spent by them, are the starting points.

A. Counsel's services included preliminary legal research, drafting the complaint, opposition to defendants' motion to strike plaintiffs' jury demand and, considerably more important, opposition (successful) to defendants' motion to dismiss for plaintiffs' failure to comply with the requirements of Federal Rule of Civil Procedure 23.1.

As to the latter motion it is worth note that plaintiffs' arguments a) that the requirements of Rule 23.1 were not applicable to a case, such as this, brought under § 36(b) of the Act, and b) that, in any event, § 36(b) gives shareholders of Funds subject to the Act the right to sue without regard to the action (or nonaction) of the Fund's directors were successful in this court, and were vindicated in the Court of

Appeal's decision in *Fox v. Reich & Tang, Inc.*, 692 F.2d 250 (2d Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1271, 75 L.Ed.2d 493 (1983), although the law was far from clear at the time and other courts had taken the contrary position.

In addition to motion practice, the usual considerable discovery was undertaken (including document discovery and numerous deposition and the review of accounting studies performed by Coopers & Lybrand who had been retained by defendants to determine the costs and benefits of the Fund to the Dean Witter organization).

The final services of plaintiffs' counsel of course consisted in negotiating the settlement agreement, drafting it in written form and preparing memoranda for the court to justify its approval.

B. In affidavits submitted in support of the application, Stephen P. Hoffman of the firm of Pomerantz, Levy, Haudek & Block, attorneys for the plaintiffs, states, on the basis of daily time records kept by his firm, that he and his partners and associates have spent a total of 869.95 hours on the case. Charged for at their normal respective billing rates, as shown in a schedule attached to Hoffman's affidavit, this expenditure of time produces a "lodestar" figure (*see City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974)) of $117,755. A second affidavit establishes that Harry W. Jacobs, co-counsel for the plaintiffs, spent 47.9 hours which, at his regular billing rate of $125 per hour, is compiled to result in an additional lodestar figure of $5,987.50 for a total (including all plaintiffs' counsel) of $123,-742.50.

In relation to the significance of time spent by attorneys, however, as counsel for plaintiffs point out, and as Judge Weinfeld has persuasively written

"While time is a factor, it should be stressed that it is only of relative importance. To give it prime importance may at times result in rewarding inefficiency or the luxurious practice of law and penalizing who are efficient and expeditious in performing their legal tasks."

The applicants argue that their expertise, which is a matter as to which we take judicial notice on the basis of their numerous appearances before the writer and other judges of this court, the quality of their work, and their standing at the bar, has enabled them to handle the case more efficiently and expeditiously than might otherwise have been the case and that, in the light of the results which they have achieved for the Fund and other factors acknowledged as relevant on fee applications (discussed below) it is reasonable that they be awarded $300,000 although the lodestar figure presented is $123,742.50. Moreover, they point out that because the Pomerantz firm was, at the time of the services rendered in this case, also working on two other cases in which legal questions common to those involved here were at issue, a portion of the firm's time was allocated among the three suits, to the benefit of the Fund. They argue that they should not be penalized for these efficiencies, especially where, as here, the requested fee would be paid by the consenting defendants, and not the applicant's clients.

They point out that the case was accepted on a contingent basis; that, under *Grinnell, supra,* 495 F.2d at 471, the risk of losing is considered an important factor in justifying a "multiplier" to be applied to the lodestar, and that in the case at hand, because the risk of loss was "extreme"—since no plaintiff had previously successfully prosecuted a suit alleging excessive management fees on behalf of a mutual fund—the lodestar figure should be appropriately increased.

The applicants argue, further, that the fees sought, 20% of the minimum gain to the Fund, are "modest" and considerably less than the percentage of client benefits allowed in this court on other applications, citing as examples, *Rosenfeld v. Black,* 56 F.R.D. 604 and cases cited at 605–6 (S.D. N.Y., 1972; Gurfein, J.) and *J.N. Futier Co. v. Philips Dodge Industries, Inc.,* [1982–2] Trade Reg.Rep. (CCH) ¶ 64, 978 at 73,065 (Sofaer, J.).

We find these arguments meritorious and persuasive and believe that a fee of $300,-

000, to be paid by the defendants, would be reasonable in the circumstances, subject to consideration of the objections filed and considered at the hearing on this application, and we turn to those objections.

### III

At the outset of the discussion as to the objections made by shareholders, two points are worthy of note. The first is that only 12 of some 640,000 shareholders have expressed any objections. The second is that since whatever fee is awarded is to be paid by the defendants, there is a real question as to a shareholder's standing to object. However, since it is appropriate that counsel demonstrate the reasonableness of fees applied for regardless of the source of payment, the objections are considered as if they were a charge against the Fund, although in fact they are not.

With the exception of certain objections argued at the hearing on the application on behalf of shareholder Gail Malcolm Lynch (discussed below as the Lynch objections) the objections expressed by the objectants clustered around the following points:

1. That the settlement sum to be received by the Fund amounts to only 33¢ for each $10,000. invested by a shareholder; that such a settlement is an insignificant accomplishment which deserves no reward.

2. That no fees should be paid to counsel in a case like this because to do so merely fosters unnecessary litigation.

3. That the fees received should be paid over a three year period.

4. That the contingency risk of loss in this case was insufficient to justify an increase over the lodestar figure.

5. That no allowance should be made for any hours spent by counsel in preparing their fee petition.

The short answers to the objections listed above are:

■ 1. As a matter of law, counsel are entitled to attorney's fees in a case such as this. The question is not whether their accomplishment · is significant or insignifi-cant but, whichever it is, whether the fees requested are proportionate and reasonable in relation to the accomplishment.

■ 2. It is unjustifiable and contrary to law to deny the payment of any fees to counsel in a case of this kind where no showing has been or can be made of impropriety or failure of duty. The purpose of the allowance of attorney's fees is to assure that institutions governed by the law—in this case the Investment Advisors Act—carefully observe its requirements. It has long been recognized that private counsel perform a useful public function in undertaking such litigation at their own risk since public authorities, including the Securities and Exchange Commission, cannot possibly provide sufficient manpower to do the job. Assuming that it is correct—although we make no finding—that the recovery here amounts to only 33¢ per $10,000 of investment, the relative smallness of the amount is irrelevant. If a telephone or utility company were to charge excessive or unauthorized fees of pennies to each customer, the amounts in the aggregate could be very large indeed but the smallness of charge per customer would not justify inaction to correct the situation. The policing of such matters is generally a socially constructive undertaking. Nothing in the record suggests that this case is an exception.

3. The settlement agreement calls for attorneys' fees to be paid in two installments. No showing has been made by the objectant which would justify extending the period to three years.

4. We discuss below the extent to which the risk of loss in this case justifies increasing the fee above the lodestar.

5. The fee application does not include time spent in preparing the fee petition or the time spent in preparation for attendance at the hearing on December 3, 1982 or responding to the Lynch objections (see Joint Petition of Plaintiffs' Attorneys' Fees and Expenses, page 13, footnote 6).

*The Lynch Objections*

At the hearing on the application for fees, the attorney for Gail Malcolm Lynch

argued 1) that there were discrepancies in the schedule of services annexed to the petition; 2) that the hourly rate charged by plaintiffs' counsel was not reasonable and 3) that plaintiffs' counsel had spent excessive time for certain portions of the services rendered.

Counsel for the plaintiffs have answered these objections in a supplemental affidavit which they were invited to submit. Paragraph 1 of that affidavit satisfactorily explains what might appear as discrepancies.

As to the hourly rates charged by the plaintiffs' counsel, it is asserted that they are no higher than those charged to clients in regular non-contingent matters and that the very rates in question have previously been approved by other judges of this court, in such cases as *J.N. Futia, Inc. v. Phelps Dodge Corp.*, 1982–2 Trade Cas. ¶ 64,978 at 73,069 (S.D.N.Y. Sept. 17, 1982); *Markowitz v. Brody*, 80 Civ. 2602, June 4, 1982 (Tr. at 29–30) (S.D.N.Y., Ward, J.).

Finally, citing the Court of Appeals reference to § 36(b)'s "tortuous legislative history" (*Gartenberg v. Merrill Lynch Asset Management*, 694 F.2d 923, at 928 (2d Cir. 1982), it is argued that the research time attributable to this case "is at best, minimal."

Lynch's counsel replies that even if plaintiffs counsel's hourly rates are found to be reasonable, they are so generous that no multiplier is justified; disagrees that the number of hours spent on research as to the legislative history is minimal and adds an argument that if plaintiffs had made demand upon the directors before this suit was instituted it would not have been necessary to litigate the question whether under § 36(b) such a demand was necessary.

We conclude that:

1) based on our own judicial notice of rates charged by comparable attorneys in this community for comparable services and previous holdings of this Court the rates charged by plaintiffs' counsel are reasonable;

■ 2) that the level of that rate, which recognizes the firm's expertise but not the risk of loss factor inherent in this case, does not bar applying a multiplier to the lodestar figure;

■ 3) that the expenditure of 714.50 hours (see Page 2 of Supplement Affidavit of Plaintiffs' Counsel) in research of the legislative history of § 36(b) was excessive, whether expended with regard to one or three cases. In our view, an expenditure of 300 hours for such research would be reasonable if not generous. Accordingly, the credit for counsel time must be reduced to 100 hours (⅓ of the charge by plaintiffs' counsel for the total research in the three related cases referred to above).

4. Lynch's suggestion that failure to make a demand upon the directors prior to the institution of suit was culpable is not persuasive. Pursuit of such a course led to the dismissal of the complaint in *Grossman v. Johnson*, 89 F.R.D. 656 (D.Mass.1981) *aff'd*, 674 F.2d 115 (1st Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 85, 74 L.Ed.2d 80, on the basis of the business judgment rule. The principle established by the litigation in this case—that demand is not necessary under § 36(b)—is not inconsequential. It stands as a ruling for the future and is of particular importance in view of the fact that the statute of limitations under § 36(b) is only one year.

## IV.

■ The services rendered in this case were such as to justify the application of a multiplier to the lodestar figure. As indicated above, to place exclusive reliance on time as a factor would penalize efficient performance of legal tasks. We are convinced that counsel in this case performed a useful function for the Fund, that the risk of loss was significant in view of the state of the law at the time the case was undertaken and that counsel themselves assumed that risk and have brought about advances in the law. Moreover, a fee amounting to 20% or less of the gain to the Fund is without question a proportion approved by numerous decisions of the judges of this court. Accordingly, the application is al-

lowed except to the extent that credit for hours spent on research in relation to the legislative history of § 36(b) is reduced by 138.50 hours (238.50 hours claimed less 100 hours approved). Reducing the application proportionately, i.e., by 138.50 hours over 869.95 hours times $300,000, results in an allowance of $252,000.

■ Lynch argues that if the fee allowance approved by the court is less than $300,000 the difference between $300,000 and the allowed amount should be paid by the defendants to the Fund. The short answer is that such an action on the part of the court would be unauthorized because it would rewrite the stipulation of settlement which has been approved. The stipulation provides

"Dean Witter will not object to any application for an award of plaintiffs' attorneys' fees and disbursements to the extent that the application seeks an award of no more than $300,000 in attorneys' fees plus disbursements. The amount of any such fees and expenses awarded by the court will be paid by Dean Witter and not by the Fund."

We agree with Dean Witter that this language provides in plain terms that the amount allowed by the court to plaintiffs' counsel will be the limit of Dean Witter's liability and makes no provision which would authorize the court to order such payment of any "excess" to the Fund.

The application is granted to the extent of awarding plaintiffs' counsel fees in the amount of $252,000 plus disbursements in the amount of $2,889.71.

Submit order.