Irwin B. BLATT and Esther Blatt, Plaintiffs-Appellees,

v.

DEAN WITTER REYNOLDS INTERCAPITAL, INC., Dean Witter Reynolds Organization, Inc., and InterCapital Liquid Asset Fund, Inc., Defendants-Appellees,

Gail Malcolm Lynch, Intervenor-Appellant.

No. 578, Docket 83–7725.

United States Court of Appeals, Second Circuit.

Argued Jan. 26, 1984.

Decided April 11, 1984.

See also 528 F.Supp. 1152.

Alan B. Morrison, Washington, D.C. (Cornish F. Hitchcock, Public Citizen Litigation Group, Washington, D.C., of counsel), for intervenor-appellant.

Marvin Schwartz, New York City (Mark F. Rosenberg, Sullivan & Cromwell, New York City, of counsel), for defendants-appellees Dean Witter Reynolds InterCapital, Inc. and Dean Witter Reynolds Organization, Inc.

Stephen P. Hoffman, New York City (Stanley M. Grossman, Pomerantz, Levy, Haudek, Block & Grossman, New York City, Harry W. Jacobs, New York City, of counsel), for plaintiffs-appellees.

Before MANSFIELD, PIERCE and WINTER, Circuit Judges.

MANSFIELD, Circuit Judge:

In this derivative stockholder's action on behalf of a diversified investment company, InterCapital Liquid Asset Fund, Inc. ("the Fund") against its manager, Dean Witter Reynolds InterCapital, Inc. ("Dean Witter") and the latter's parent, Dean Witter Reynolds Organization, Inc., alleging that the defendants charged excessive management fees in violation of § 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a–35(b), Gail Lynch, an intervening shareholder of the Fund, appeals from an order of the Southern District of New York, (Morris E. Lasker, J.) awarding $252,000 in attorney's fees and disbursements to counsel for the plaintiffs upon settlement of the action. Lynch argues that since the defendants, prior to the district court's order, had agreed in their stipulation of settlement not to object to plaintiffs' application to the court for an award of attorney's fees and disbursements to the extent that it sought no more than $300,000, the defendants should pay the Fund $48,000, i.e., the difference between the amount to which Dean Witter would not object ($300,000) and the amount actually awarded ($252,000). We find that argument to be meritless and affirm the district court's order.

Irwin and Esther Blatt, shareholders in the Fund, initiated this shareholder derivative action against Dean Witter on October 15, 1979, claiming that the management fees charged to the Fund by Dean Witter were excessive and disproportionate to the services rendered and thereby in violation of the Investment Company Act of 1940, as amended, 15 U.S.C. §§ 80a–1, *et seq.* After a period of discovery, the parties agreed to

settle the action on September 30, 1982. The stipulation of settlement provided for a reduction of approximately $300,000 per year for five years in the management fees paid by the Fund to Dean Witter or a total savings to the Fund of $1,500,000. At the time of the settlement, the Fund was paying Dean Witter approximately $26.8 million per year in fees to manage approximately $9.4 billion of assets.

After the parties had reached an agreement with respect to all elements of the settlement it was stipulated that Dean Witter would pay attorney's fees to plaintiffs' counsel in an amount to be set by the court and would not object to an application for payment of up to $300,000. The relevant settlement provision provided:

"10. Dean Witter will not object to any application for an award of plaintiffs' attorneys' fees and disbursements to the extent that the application seeks an award of no more than $300,000 in attorneys' fees plus disbursements. The amount of any such fees and expenses awarded by the Court will be paid by Dean Witter and not by the Fund."

Both parties were aware, however, that the fee ultimately to be paid would be set by the court. Plaintiffs later applied to the court for an attorney's fee award of $300,000.

The Clerk for the Southern District of New York notified all shareholders of the Fund of a hearing to be held on December 3, 1982, to determine whether the settlement should be approved by the court. Shareholders were invited to appear at that hearing and were required to submit copies of their objections to the settlement by November 23, 1982. On December 3, 1982, Judge Lasker conducted the hearing at which twelve of the Fund's more than 640,000 shareholders appeared. Most of those shareholders objected to the attorney's fees provisions and to the application by plaintiffs' counsel for $300,000 in attorney's fees. One of the objecting shareholders, appellant Lynch, argued that the fee application was excessive and that the court should order Dean Witter to pay to the Fund the difference between the $300,000 figure, the application for which was not objected to by Dean Witter, and any lesser amount that would be allowed by the court.

Judge Lasker enterd an order and judgment on December 29, 1982, approving the settlement in full but reserved jurisdiction over the application for attorney's fees. No appeal was taken from that judgment. On July 15, 1983, Judge Lasker entered an order and judgment awarding plaintiffs' counsel $252,000 in attorney's fees. The court explicitly rejected Lynch's argument that the $48,000 difference between the $300,000 figure used in the application to which Dean Witter had agreed not to object and the $252,000 actually awarded should be paid to the Fund. The court reasoned that "such an action on the part of the court would be unauthorized because it would rewrite the stipulation of settlement" which had been previously approved, *Blatt v. Dean Witter Reynolds InterCapital, Inc.*, 566 F.Supp. 1294, 1299 (S.D.N.Y. 1983).

By notices of appeal filed August 15 and September 8, 1983, Lynch appealed the July 15 judgment, arguing that the award of attorneys' fees was excessive and that Dean Witter should be required to pay the $48,000 to the Fund. Lynch subsequently withdrew her appeal regarding the excessiveness of the fee award, leaving only the latter issue for our consideration.

### DISCUSSION

■ The district court's July 15, 1983, order awarding attorney's fees is separately appealable as a final order. *White v. New Hampshire Dep't of Employment Security*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). However, appellant's contention that the Fund is entitled to receive the $48,000 difference between the $252,000 actually awarded and the $300,000 which plaintiffs sought from the court depends on the terms of the settlement agreement approved by the court. Under that agreement Dean Witter did not agree to pay $300,000. It agreed only that it would not object to an *application* for a sum up

to $300,000. Thus Dean Witter was obligated to pay only the amount awarded by the court, which not only might be but actually turned out to be less than $300,000. To hold otherwise would be to depart from the terms of the agreement.[1]

■ Lynch argues in the alternative that the court should nevertheless have disregarded the terms of the settlement and ordered the payment of the $48,000 to the Fund for the reason that plaintiffs' counsel acted in their own interest and to the detriment of the plaintiff shareholder class when they negotiated a settlement whereby they would receive attorney's fees directly from Dean Witter rather than from the Fund. According to Lynch, the attorney's fee arrangement necessarily gave plaintiffs' counsel an incentive to accept a less desirable compensation package for the Fund in exchange for Dean Witter's promise not to object to a large fee application. She argues that Dean Witter would have been willing to pay the $300,000 directly to the Fund, which would have put the shareholders in a more favorable position than that actually negotiated. She concludes that the settlement was therefore adverse to the interests of the other stockholders and that the proper remedy would be for this court to order Dean Witter to pay the $48,000 to the Fund.

We disagree. In the first place, the matter of plaintiffs' attorney's fees was never discussed until the parties had agreed on all of the other elements of the settlement. Thus, when plaintiffs' counsel negotiated the settlement package for the shareholders they had no assurance or expectation that Dean Witter would agree not to object to a particular fee application. Moreover, the parties did not agree that Dean Witter would pay a particular sum to plaintiffs' counsel; that was left entirely to the court. When an attorney's fee arrangement is thus negotiated after the parties have agreed on the substance of the settlement and there is no provision for a specific fee payment, no conflict of interest is shown. Similar agreements are not uncommon. Haudek, *Settlement and Dismissal of Stockholders' Actions*, 23 Sw.L.J. 765, 784 (1969) (settlement agreements "frequently" provide that plaintiffs' counsel will apply to the court at a later date for attorney's fees of no more than a specified amount).

Although some courts have criticized the payment of attorney's fees by a defendant directly to plaintiffs' counsel in a class action, *see, e.g., City of Philadelphia v. Chas. Pfizer & Co.*, 345 F.Supp. 454, 471 (S.D.N.Y.1972); *Josephson v. Campbell*, 1967–69 Fed.Sec.L.Rep. (CCH) ¶ 92,347, at

1. Regardless whether appellant has standing to attack the settlement collaterally after it has been approved by an order from which no appeal was taken, the district court was not guilty of any abuse of discretion in approving the fee terms of the settlement agreement which are the basis of the present appeal. Moreover, appellant concedes that she does "not object to the basic settlement," which would result in savings to the Fund of $1,500,000 in management fees over a period of five years. She objects only to the provision which would allow the defendants to retain the difference between $300,000 and any lesser fee that might be allowed by the court.

Under Fed.R.Civ.P. 23.1, once the parties to a shareholder's derivative action reach an agreement to settle the action, that agreement must be submitted to the court for its approval. The court then must schedule a hearing and notify all shareholders of their right to object to the terms of the proposed settlement. Once the shareholders have had the opportunity to present their objections at such a hearing, the

decision whether to accept or reject the proposed settlement is left to the district court, reviewable by us only for abuse of discretion. The rationale for requiring court approval is to insure that the settlement is fair to all and does not favor the named plaintiff-shareholders or their counsel. Thus, the standard of review to be applied by the district court is whether the settlement "is so unfair on its face as to preclude judicial approval." *Glicken v. Bradford*, 35 F.R.D. 144, 151 (S.D.N.Y.1964). *See generally* 7A *Wright & Miller, Federal Practice and Procedure* § 1839 (1972).

In the instant case all of the foregoing requirements were satisfied. Under these circumstances there was nothing unfair to absent stockholders in the court's approval of the agreement permitting the defendants to retain the $48,000 difference between the $300,000 limit and the $252,000 attorney's fee allowed by the court, *see, e.g., Lessac v. Television-Electronics Fund, Inc.*, 1967–69 Fed.Sec.L.Rep. (CCH) ¶ 92,305, at 97,449 (S.D.N.Y.1968); *Glicken v. Bradford*, 35 F.R.D. 144, 158 (S.D.N.Y.1964).

97,658 (S.D.N.Y.1969), none has rejected a settlement on account of such a fee arrangement. On the contrary, a number of courts and commentators have concluded that the payment of fees directly by the defendant in an amount to be determined by the court actually benefits the shareholder class because the settlement package is not reduced by the payment of counsel fees. *See, e.g., Lessac v. Television-Electronics Fund, Inc.*, 1967–69 Fed.Sec.L. Rep. (CCH) ¶ 92,305, at 97,449 (S.D.N.Y. 1968); *Glicken v. Bradford*, 35 F.R.D. 144, 158 (S.D.N.Y.1964); Haudek, *Settlement and Dismissal of Stockholders' Actions*, 23 Sw.L.J. 765, 783 (1969).

The judgment of the district court is affirmed.