Robert SAYLOR, et al., Plaintiffs,

v.

Philip BASTEDO, et al., Defendants.

No. 65 Civ. 516 (CHT).

United States District Court,
S.D. New York.

Sept. 12, 1984.

372

Avrom S. Fischer, Brooklyn, N.Y., for plaintiffs.

Morgan, Lewis & Bockius; New York City, for defendants; James W. Harbison, Jr., Thomas R. Stritter, New York City, of counsel.

Pollack & Kaminsky, New York City, for nominal defendant Tonopah Mining Co. of Nevada; John Halebian, Daniel A. Pollack, New York City, of counsel.

Stephen E. Pearlman, Flushing, N.Y., for executrix of Estate of Abraham I. Markowitz.

Gerard J. O'Brien, New York City, for objector Michael McLaughlin; Richard Steel, New York City, of counsel.

## OPINION

TENNEY, District Judge.

This is a stockholder's derivative action brought on behalf of the Tonopah Mining Company of Nevada ("Tonopah") by J. Ralph Saylor ("Saylor"). Pursuant to Federal Rule of Civil Procedure ("Rule") 23.1 the parties now seek court approval of a settlement agreement. In addition, plaintiffs' attorneys seek an award of attorney's fees not to exceed the amount of $177,000. For the reasons stated below the Court

approves the settlement agreement and awards fees and costs in the above amount.

## BACKGROUND

The background facts and tortured procedural history of this very old action have been outlined in detail in the prior opinions of this and other courts, *see, e.g.,* 100 F.R.D. 44, 46–48 (S.D.N.Y.1983), and will not be repeated here. The salient facts for the purposes of this motion are as follows.

In 1965, Saylor filed a complaint on behalf of himself and all other similarly situated stockholders of Tonopah. The complaint charged that the defendants, several of Tonopah's directors and certain of its corporate affiliates, (1) had caused the company to sell its subsidiary, Tonopah Nicaragua Company, which owned the Rosita mine, to Mines, Inc. (an affiliate of Tonopah) for grossly inadequate consideration, and (2) had arranged subsequently for the transfer of the Rosita mine to La Luz Mines, Ltd. ("La Luz"), another Tonopah affiliate. La Luz apparently owned the only hydroelectric power source in the vicinity of the mine.

In 1970, plaintiffs' attorney—the late Abraham I. Markowitz ("Markowitz")—negotiated a settlement on plaintiffs' behalf ("the old settlement"). That settlement provided that defendants would pay Tonopah's stockholders $250,000, less approximately $84,000 in legal fees and expenses which would be paid to Markowitz. Thirteen years later, after the case had been twice to the court of appeals, the settlement was once again submitted to this Court for approval.[1] After examining all the factors that must be considered before a proposed settlement in a derivative action can be approved, *see* 100 F.R.D. at 49–58, the Court disapproved the old settlement.

The Court found that plaintiffs had a reasonable probability of success on the issue of whether defendants had failed to disclose to the SEC their intent to transfer the Rosita mine to La Luz, *see* 100 F.R.D. at 55–57, and that, in light of the circumstances, "the actual advantage that La Luz ... derive[d] from its ownership of the hydroelectric power source may well be the most appropriate measure of damages." *Id.* at 57. Based on the annual reports, the Court estimated that this figure was approximately $800,000. *Id.* Accordingly, the old settlement, which provided for a settlement fund of only $250,000, was determined to be inadequate, and the settlement was disapproved. Subsequent to the disapproval, the parties were told to prepare for trial.

Faced with the prospect of litigating this action, the parties immediately proceeded to negotiate a new stipulation of settlement ("the new settlement"), which was submitted to the Court in the spring of 1984. *See* Stipulation and Order of Settlement, 65 Civ. 516 (CHT) (April 5, 1984) ("Stipulation of Settlement"). The new settlement provides for a $1,000,000 settlement fund for plaintiffs. It also stipulates that the fund will be used to pay such expenses and fees as the Court may approve. Plaintiffs' lead counsel has agreed that the costs and legal fees requested will not exceed a total of $177,000.

## DISCUSSION

### A. *The Settlement*

On May 31, 1984, after the appropriate notice had been sent to all shareholders of record, a hearing was held before the Court to determine whether the new settlement outlined in the Stipulation of Settlement should be approved as fair, reasonable and adequate. Only one objector, Michael J. McLaughlin ("McLaughlin"), made an appearance at the hearing in order to speak against the settlement and the request for attorney's fees.[2] McLaughlin's objections

---

1. On two prior occasions the old settlement was approved by the district court. Both approvals were later reversed on appeal. See 456 F.2d 896 (2d Cir.1972) and 623 F.2d 230 (2d Cir.1980).

2. No other bona fide objectors submitted briefs or attended the hearing. However, one individual did submit a written request for an extension of time in order to submit objections to the settlement. An examination of the stock certifi-

to the proposed settlement, however, are conclusory and meritless, without support in either the law or the facts before the Court. For example, in his affidavit, McLaughlin merely asserts that "[t]he proposed settlement is not fair, reasonable or adequate for the principal reason that the defense to the action is entirely spurious. Furthermore, there has been at least one major violation of Security and Exchange Laws and/or Regulations on behalf of the defendants or some of them." Objections to Settlement, 65 Civ. 516 (CHT) (May 24, 1984) ("Objections"), at 1; *see also* Transcript of Hearing before this Court on May 31, 1984, at 9–12. Thus, nothing that McLaughlin has presented to the Court would even suggest that the settlement does not meet the applicable standard of review, namely "whether the settlement 'is so unfair on its face as to preclude judicial approval.'" *Blatt v. Dean Witter Reynolds InterCapital, Inc.*, 732 F.2d 304, 307 n. 1 (2d Cir.1984) ("*Dean Witter*") (quoting *Glicken v. Bradford*, 35 F.R.D. 144, 151 (S.D.N.Y.1964) and citing 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1839 (1972)).

Indeed, the terms of the new settlement appear eminently fair under the circumstances. In its previous opinion on the old settlement the Court discussed all the factors that must be considered before a settlement can be approved in this case. *See* 100 F.R.D. at 49–58. This review included an examination of the claims and defenses in the action, the plaintiffs' probability of success on the merits, and the possible amount of recovery, if the plaintiffs were to prevail at trial. *Id.* Since no new facts have been disclosed and since no change has occurred in the law, there is no need to reiterate the entire analysis. The major substantive difference between the new settlement and the old is that the new one provides for a settlement fund of $1,000,000—while the old provided for only $250,000—and that a smaller percentage of the fund is allocated to attorney's fees and costs under the new than under the old. The new settlement limits the amount of the settlement fund which may be used for plaintiffs' attorney's fees and costs to less than 18%; the old settlement would have given more than 30% of the fund to Markowitz.

■ In light of all the factors that the Court previously considered in rejecting the old settlement, *id.*, and in light of the increased amount of money that the defendants have agreed to pay plaintiffs, the Court finds that the new settlement is entirely fair and reasonable. The settlement fund exceeds the Court's previous estimate of the amount of damages that plaintiffs could hope to recover if successful at trial. To be sure, the amount is slightly less than the $1,300,000 which is the maximum amount that the plaintiffs' attorney now asserts the shareholders could recover if they prevailed at trial. The difference, however, between that amount and the amount in the proposed settlement is insignificant when considered in light of the fact that the wrongs alleged in this action occurred in the 1950's, and that the trial of this action would therefore involve considerable difficulties. As this Court previously noted, "Clearly there are substantial risks in proceeding with a trial so long after the events complained of.... [A] trial of plaintiffs' claims is likely to be quite long and complex." 100 F.R.D. at 57 (footnote omitted). By any measure, the $1,000,000 settlement is fair and reasonable to the stockholders of Tonopah. Furthermore, the Court finds that the maximum figure of $177,000 for attorney's fees and costs is well within the range of fees that have been awarded in complex litigation like the instant case. *See Dean Witter*, 566 F.Supp. 1294, 1296–07 (S.D.N.Y.1983), *aff'd*, 732 F.2d 304 (2d Cir.1984).

Thus, for all the foregoing reasons, it is time for this ancient case to creak to a

---

cates submitted with the request and an examination of the list of shareholders of record as of July 1, 1964 demonstrated that the potential objector and those he spoke for were not stockholders of Tonopah and, therefore, had no standing to object to the proposed settlement.

close. Accordingly, the proposed new settlement is approved.

### B. *Application for Attorney's Fees and Costs*

Prevailing attorneys in stockholder derivative actions are entitled to an award of fees and costs. The settlement specifies that no more than $177,000 will be awarded to the attorneys out of the settlement fund. After reviewing the three applications submitted to the Court for fees and costs, awards in the following amounts are approved:

#### 1. *Estate of Abraham I. Markowitz.*

The estate of Markowitz has stipulated to limit its request for fees for disbursements and services previously rendered by Markowitz to the sum of $600. *See* Stipulation and Order, 65 Civ. 516 (CHT) (May 15, 1984). The estate is accordingly hereby awarded $600.

#### 2. *Gerard O'Brien*

Since at least 1970, McLaughlin has been represented by Gerard O'Brien ("O'Brien"). *See* Affidavit of Gerard O'Brien, sworn to June 27, 1984, at 4–5. O'Brien asserts that if the Court decides to approve the new settlement he should be awarded 40% of the $177,000 that may be paid out of the fund for attorney's fees and costs. *See id.* at ¶ 5.

■ The Court does not agree. An award of attorney's fees and costs in connection with the settlement of a derivative action is warranted where the corporation on whose behalf the action was brought benefited from the attorney's actions. *See City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098 (2d Cir.1977); *see also Krasner v. Dreyfus Corp.*, 90 F.R.D. 665, 674–75 (S.D.N.Y.1981).

■ O'Brien's application fails to specify how his actions conferred any benefit upon Tonopah. O'Brien spent no time on opposing the old settlement when it was before the Court in 1983, and did not participate in the negotiation of the new settlement. An examination of O'Brien's application and the record in this case demonstrates that O'Brien's client, McLaughlin, who has standing only as an objector,[3] has hindered rather than promoted the prosecution of this action.[4] On a number of occasions during the course of the litigation, both this Court and the court of appeals have observed that McLaughlin's actions were delaying the progress of this case. *See, e.g.*, 78 F.R.D. at 153; 623 F.2d at 233 n. 5. O'Brien's fee application bears this out. It demonstrates that much of O'Brien's time was spent on attempting to displace the counsel for plaintiffs and on moving for the substitution of McLaughlin as plaintiff. There is no evidence in O'Brien's application that any of his actions on behalf of McLaughlin since 1970 have conferred any benefit on Tonopah or its shareholders. O'Brien is not entitled to an award of fees or costs.

#### 3. *Avrom Fischer*

■ In November 1970, Avrom S. Fischer ("Fischer") was retained by Roseann Horn, an objector to the old settlement. Since November 1974, Fischer has repre-

---

**3.** Since McLaughlin was not a stockholder of record at the time of the alleged fraud he has no standing to participate in any of the proceedings before the Court except those matters bearing on proposed settlements. *See* 78 F.R.D. 150, 151–53 (S.D.N.Y.1978).

**4.** Much of the time that O'Brien claims to have spent on the substantive phases of this action are not compensable because McLaughlin had no standing to participate in those phases of the litigation. *See supra* note 3. For example, the time O'Brien spent opposing the motion to dismiss the claims against three prior defendant corporations associated with Tonopah—Falconbridge Nickel Mines, Ltd., Ventures, Ltd., and La Luz, *see* 71 F.R.D. 380 (S.D.N.Y.1976)—is not compensable. *See Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d 257, 274–75 (9th Cir.1964), *cert. denied*, 380 U.S. 956, 85 S.Ct. 1081, 13 L.Ed.2d 972 (1965). Nor is the time that O'Brien spent on McLaughlin's intervention motion compensable since O'Brien knew or should have known that McLaughlin was not a contemporaneous shareholder, and the motion was therefore frivolous. *See Seigal v. Merrick*, 619 F.2d 160, 166 & n. 9 (2d Cir.1980).

sented the named plaintiff, Saylor. Using the lodestar method,[5] Fischer contends that his lodestar figure for the prosecution of this action is $252,818.75.[6] However, in negotiating the proposed new settlement, Fischer agreed "that he [would] make no request for combined fees, allowances and disbursements in any amount in excess of $177,000.00, which sum shall include any payment of fees, allowances and disbursements in a total amount not to exceed $2,000.00 to Richard E. Wells, Esq. ["Wells"], of Pottstown, Pennsylvania."[7] Stipulation of Settlement, ¶ 13. The $177,000 amount is approximately 70% of the alleged lodestar amount.

■ Objector McLaughlin argues that this amount should not be awarded to Fischer because it is "grossly excessive in the light of the relatively short period of his retainer and the services rendered." Objections, at 1. This argument is meritless. It is true that Fischer has only been involved in this action since 1970. While this is only one-half of the time that this action and its predecessor, *Hawkins v. Lindsley*, No. 123-38 (S.D.N.Y. June 22, 1961 and July 27, 1961), *aff'd*, 327 F.2d 356 (2d Cir.1964) (dismissed for want of prosecution), have been pending in this court, the amount of time and the number of years that Fischer has worked on this case can by no stretch of the imagination be called insignificant. More important, no doubt exists that Fischer's strenuous efforts to defeat the old settlement and subsequently to negotiate the new one, now deemed acceptable to the Court, have conferred a benefit on the shareholders of Tonopah. Furthermore, the Court finds that neither Fischer's billing rate nor the hours that he expended on the prosecution of this complex and convoluted case are excessive. From this conclusion it follows a fortiori that the $177,000 amount that Fischer has stipulated to accept as a ceiling on fees is not excessive.

Accordingly, the Court holds that Fischer is entitled to an award of $176,400.[8] Pursuant to the Stipulation of Settlement, $2,000 of this amount is to be paid to Wells. The remaining $600 out of the $177,000 is awarded to the estate of Markowitz. No fees or costs are awarded to O'Brien.

---

5. In this circuit the lodestar approach is used to calculate attorney's fees. *See Cohen v. West Haven Bd. of Police Comm'rs*, 638 F.2d 496, 504–05 (2d Cir.1980); *City of Detroit v. Grinnell Corp.*, 560 F.2d at 1098. Under this approach "attorney's fees are calculated by multiplying the number of billable hours that the prevailing party's attorneys spend on the case by 'the hourly rate normally charged for similar work by attorneys of like skill in the area.'" *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1140 (2d Cir.1983) (quoting *Grinnell*, 560 F.2d at 1098); *cf. Blum v. Stenson*, —— U.S. ——, 104 S.Ct. 1541, 1543–44, 79 L.Ed.2d 891 (1984).

6. Fischer submitted the following schedule regarding hours he spent on the prosecution of this action:

| Time Period | Hours | Hourly Rate | Lodestar Figure |
|---|---|---|---|
| 1970 to Sept. 1975 | 462 | $100 | $ 46,200.00 |
| Oct. 1975 to Nov. 1980 | 795 | 150 | 119,250.00 |
| Dec. 1980 to July 1984 | 499.25 | 175 | 87,368.75 |
| Total for Fischer | | | $252,818.75 |

*See* Affidavit of Avrom Fischer in Further Support of Motion for Award of Counsel Fees, sworn to July 30, 1984.

In support of his application for fees and costs Fischer, pursuant to the guidelines established in this circuit, submitted contemporaneous time records for the years 1976 and 1978 to 1984. He submitted reconstructed records for the years prior to 1974 and for the years 1975 and 1977. *See Birmingham v. Sogen-Swiss Internat'l Corp. Retirement Plan*, 718 F.2d 515, 523–24 (2d Cir.1983). The Court has reviewed these records and finds them sufficiently detailed to support Fischer's application for fees and costs.

7. Wells and Thomas Hoffman, formerly Wells' associate and now his partner, assisted Fischer during 1978 and 1979. Their lodestar figures can be calculated as follows:

| Attorney | Hours | Hourly Rate | Lodestar Figure |
|---|---|---|---|
| Wells | 17.5 | $100 | $1,750.00 |
| Hoffman | 12 | 80 | 960.00 |
| Total for Wells and Hoffman | | | $2,710.00 |

*See* Affidavit of Avrom Fischer in Support of Motion for Judicial Approval of Settlement and for Award of Counsel Fees, sworn to June 29, 1984, at 112–14.

8. Six hundred dollars has been awarded to Markowitz' estate. *See supra* discussion in text.

## CONCLUSION

The Clerk of the Court is therefore directed to enter judgment pursuant to the Order and Judgment filed on this day approving the proposed settlement and awarding attorney's fees in the amounts set out above.