**Gerald W. BYRNE, Plaintiff-Appellant,**

v.

**BUFFALO CREEK RAILROAD COMPANY and John J. Hayes, as Chairman of Local 12, a Local Unit of United Transportation Union, Defendants-Appellees.**

No. 973, Docket 84–9041.

United States Court of Appeals,
Second Circuit.

Argued April 11, 1985.

Decided June 18, 1985.

Van Graafeiland, Circuit Judge, filed dissenting opinion.

Michael Beilewech, Buffalo, N.Y. (Magavern & Magavern, Buffalo, N.Y., of counsel), for plaintiff-appellant.

Courtland R. LaVallee, Buffalo, N.Y. (Moot & Sprague, Buffalo, N.Y., of counsel), for defendant-appellee Buffalo Creek R. Co.

Robert Boasberg, Boston, N.Y., for defendant-appellee John J. Hayes.

Before LUMBARD, VAN GRAAFEILAND and CARDAMONE, Circuit Judges.

LUMBARD, Circuit Judge:

This appeal requires us to decide the rare question, in this circuit, of whether a litigant should be deprived, after ten years of litigation, of a judgment for wrongful discharge and unfair representation because during litigation delays, for which the district court must bear the major responsibility, the Supreme Court changed the law regarding the applicable statute of limitations for the bringing of his suit.

Gerald W. Byrne began working for the Buffalo Creek Railroad Company in 1961, first as a fireman-engineer and then as an engineer. In February 1969, he entered the hospital, suffering from appendicitis. While receiving treatment, he encountered complications, including a massive hemorrhage, which required him to have a total colectomy and a permanent ileostomy. As a result, he missed several months of work.

After recuperating, Byrne, with the approval of his physician, sought to return to his job at Buffalo Creek, but he was notified on July 22, 1969 that his services were terminated. His attempts thereafter to gain reemployment were unsuccessful and his union, Local 12 of the United Transportation Union, failed to press his claim. Buffalo Creek's final affirmation of Byrne's termination occurred in 1970.

On July 8, 1975, Byrne brought suit in the Western District against Buffalo Creek and John Hayes, as chairman of the union, alleging that the railroad had wrongfully discharged him and that the union had failed to represent him fairly.

Byrne's suit was not reached for trial until June 1979. A bench trial was completed on June 8th. Eleven days later, on June 19, Byrne, according to post-trial submissions, was reinstated by Buffalo Creek's successor-in-interest, Consolidated Rail Corporation, for the obvious reason that the railroad must have foreseen a decision in Byrne's favor.

The district court, however, did not render its decision until April 12, 1982. It held that Byrne's suit was timely under *Abrams v. Carrier Corp.*, 434 F.2d 1234, 1252–53 (2d Cir.1970), *cert. denied*, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971), in which we held that a six-year statute of limitations applied in cases of this sort, and that both the railroad and the union were liable for lost wages from July 22, 1969 to March 31, 1977 in the tentative amount of $101,720.34, plus attorney's fees. In calculating lost wages, the court excluded much of the period from April 1970 to July.1975, during which Byrne inexplicably delayed bringing suit. *Byrne v. Buffalo Creek R. R.*, 536 F.Supp. 1301 (W.D.N.Y.1982).

The court held the matter open, however, "to allow the parties to submit further argument concerning damages." In particular, the court sought guidance as to the amount damages should be reduced because of the railroad's rehiring of Byrne and because of Byrne's earnings while not working for the railroad. During this further delay, the Supreme Court decided *Bowen v. United States Postal Service*, 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983), concerning apportionment of damages between the employer and the union in cases like this. Subsequently, the court asked the parties to consider the relevancy of *Bowen*, and Buffalo Creek moved for reconsideration and modification of the April 12, 1982 order.

During the ensuing period of further delay before another district court ruling, the Supreme Court decided on June 8, 1983, in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), that a six-month statute of limitations governs wrongful discharge and unfair representation cases.

In 1984, we held, in *Welyczko v. U.S. Air, Inc.*, 733 F.2d 239 (2d Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984), that *DelCostello* had retroactive effect. Finally, on November 30, 1984, the district court held that *Welyc-*

*zko* mandated the application of *DelCostello* to all pending wrongful discharge and unfair representation cases, and, accordingly, dismissed Byrne's complaint.

■ It is true that a court, as a general rule, must apply the law in effect at the time it renders its decision. *Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 281, 89 S.Ct. 518, 525, 21 L.Ed.2d 474 (1969). It is also true that in *DelCostello* the Supreme Court applied the new six-month statute of limitations for wrongful discharge and unfair representation claims to govern the case before it, indicating its intention that its ruling be given retroactive effect. Accordingly, in *Welyczko*, concluding that we were bound by the Supreme Court's prior decision, we held that the six-month statute of limitations applied retroactively. All but one of the other circuits which have considered the question have also concluded that *DelCostello* is to be applied retroactively. *See Smith v. General Motors Corp.*, 747 F.2d 372, 374–75 (6th Cir.1984).

■ At the same time, it is well recognized that, in the interest of justice, courts may exclude certain cases from the retroactive application of a judicial decision. *See Cipriano v. City of Houma*, 395 U.S. 701, 706, 89 S.Ct. 1897, 1900, 23 L.Ed.2d 647 (1969). In determining whether to do that, they consider three factors: 1) whether the judicial decision establishes a new principal of law; 2) whether retroactive operation would advance or inhibit the new ruling's effect; and 3) whether retroactive operation "could produce substantial inequitable results." *See Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971) (quoting *Cipriano*, 395 U.S. at 706, 89 S.Ct. at 1900). Although we noted in *Welyczko* that the six-month statute of limitations for wrongful discharge and unfair representation cases ought to be applied retroactively without regard to the above three-factor analysis, neither that holding nor *DelCostello* itself foreclosed the possibility of there ever being a case in which, because of special circumstances, we would find that the ret-

roactive application of the six-month statute of limitations would be inappropriate.

In this case, we are persuaded that considerations of equity require us not to apply *DelCostello*. We think to do otherwise would work a gross injustice because of the large amount of time and money the parties have already invested in this lawsuit, which Byrne filed nearly eight years prior to the Supreme Court's decision in *DelCostello*. Moreover, the district court must bear a great measure of responsibility for unexplained delays in deciding relatively simple issues. Even allowing the court the benefit of any doubt as to why such a suit should wait 4 years from inception to trial, we can imagine no good reason for a delay of almost three more years before the court's opinion in April, 1982 on the merits of Byrne's claim.

A plaintiff such as Byrne is seldom situated to be able to press such suits. He must rely first on his union, which failed him in this case, then he must find counsel willing to take such a case on a contingency fee basis, and then he must look to the court to give his case reasonable attention. To penalize Byrne because, during the inexcusable delays, the law was changed would be to deprive him of compensation for substantial damages. After the trial in June 1979, he should have had a judgment no later than the end of that year, with an appeal addressed to, and decided upon, the merits in 1980.

■ We have examined all the decisions which have dismissed suits based on a retroactive application of *DelCostello*, and we can find no case where the circumstances present any situation comparable to that faced here by Byrne. In *Welyczko*, the lawsuit was dismissed on a motion for summary judgment and prior to a decision on the merits. 733 F.2d at 240. Similarly, the other circuits that have applied *DelCostello* retroactively to dismiss claims have done so only in cases where the issue arose prior to commencement of trial and, in most cases, within a year of the complaint's filing. *See Graves v. Smith's Transfer Corp.*, 736 F.2d 819 (1st Cir.1984); *Perez v. Dana*

*Corp.*, 718 F.2d 581 (3d Cir.1983); *Murray v. Branch Motor Express Co.*, 723 F.2d 1146 (4th Cir.1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 292, 83 L.Ed.2d 228 (1984); *Edwards v. Sea-Land Service, Inc.*, 720 F.2d 857 (5th Cir.1983); *Smith v. General Motors*, 747 F.2d 372 (6th Cir.1984); *Lincoln v. District 9, Int'l Ass'n of Machinists & Aerospace Workers*, 723 F.2d 627 (8th Cir.1983). Here, there has been nearly ten years of costly litigation and a full trial on the merits which resulted in a determination that Byrne is entitled to damages. These extraordinary circumstances compel us to carve out a limited exception to our holding in *Welyczko* that *DelCostello* applies retroactively.[1]

We reverse the judgment of the district court and direct expedited and prompt consideration of the judgment to be entered against the railroad and the union. We retain jurisdiction. If there is any appeal from a judgment, we will expedite the appeal, upon application.

VAN GRAAFEILAND, Circuit Judge, dissenting:

One of the great strengths of the Second Circuit is the willingness of its able and respected district judges to accept the not-always-perfect leadership of this Court in our mutual effort to establish a just and coherent body of Circuit law. If this system is to function properly, a district judge who has followed faithfully a precedent of this Court should not have the ground cut out from under him by a decision which overturns a prior holding while purporting to simply "carve out a limited exception" to it. Because that is what is happening to Judge Elfvin in this case, I respectfully dissent.

In *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court ordered the dismissal of a four-year-old lawsuit against an employer and a union because it was not brought within the six-month limitation period of section 10(b) of the NLRA, 29 U.S.C. § 160(b). In *Welyczko v. U.S. Air, Inc.*, 733 F.2d 239 (2d Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984), we refused to "carve out an exception to the retroactivity principle" adopted in *DelCostello*. *Id.* at 241. Holding that a *Chevron Oil* analysis (*see Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971)) was inappropriate because the *DelCostello* court had squarely held its decision to be retroactive, we concluded that "in employment termination cases, a six-month statute of limitations applies both retroactively and prospectively to wrongful discharge/failure to represent claims." *Id.* My colleagues now effectively overturn the *Welyczko* panel's holding by "carving out an exception" to that panel's refusal to carve out an exception.

In the process, they compound what I believe to be error by asserting a basis for their holding that, so far as the record discloses, was neither argued in the district court nor briefed on appeal, *i.e.*, "inexcusable delay". As a general rule, arguments that neither the trial court nor opposing counsel have had an opportunity to weigh and discuss will not be considered by an appellate court. *Safeway Stores, Inc. v. Oklahoma Retail Grocers Association, Inc.*, 360 U.S. 334, 342 n. 7, 79 S.Ct. 1196, 1202 n. 7, 3 L.Ed.2d 1280 (1959); *Wedra v. Thomas*, 671 F.2d 713, 718 (2d Cir.), *cert. denied*, 458 U.S. 1109, 102 S.Ct. 3491, 73 L.Ed.2d 1372 (1982); *In re Chinese Maritime Trust, Ltd. v. Panama Canal Co.*,

---

1. Contrary to the assertion of the dissent, we have not overruled or eviscerated *Welyczko*. It remains the rule of this Circuit that the six-month statute of limitations applies retroactively, as a matter of course, to wrongful discharge and unfair representation cases. We except this case from that rule only because we believe it presents unique circumstances. It contrasts sharply with all other cases, including

*Welyczko*, in which similar claims have been dismissed based on a retroactive application of the *DelCostello* statute of limitations in that it was commenced nearly eight years prior to the Supreme Court's decision in *DelCostello*. Absent the inexcusable delays, which the trial court inexplicably permitted, this case would have been fully resolved long before the decision in *DelCostello*.

478 F.2d 1357, 1359 n. 1 (2d Cir.1973), *cert. denied,* 414 U.S. 1143, 94 S.Ct. 894, 39 L.Ed.2d 98 (1974); *Independent Wireless Telegraph Co. v. Radio Corporation of America,* 270 U.S. 84, 86, 46 S.Ct. 224, 225, 70 L.Ed. 481 (1926); *Hamdi v. Ibrahi m Mango Co. v. Reliance Insurance Co.,* 291 F.2d 437, 445 (2d Cir.1961) (per curiam). The wisdom of this general rule is clearly evident in the instant case.

The record shows that appellant was represented by an attorney as far back as 1969, when his differences with appellees first arose, and the district court found that "had [appellant] acted with reasonable diligence the instant suit would have been instituted by the end of July, 1970." *See Byrne v. Buffalo Creek Railroad Co.,* 536 F.Supp. 1301, 1305, 1313 (W.D.N.Y.1982). In contrast to the district court's finding of "inexplicable delay" on appellant's part, which was not clearly erroneous, *id.* at 1312, the majority concoct reasons out of whole cloth to justify the delay; *e.g.,* the difficulty in finding counsel willing to take appellant's case. My colleagues then find the district court's delay to be "inexcusable", despite the fact that neither opposing counsel nor the district court ever had the opportunity to consider and discuss whether this was so.

In the determination of whether a change of law should be applied to a particular case, it has been well said that "[t]oo many irrelevant considerations, including the common cold, bear upon the rate of progress of a case through the judicial system." *Williams v. United States,* 401 U.S. 646, 658 n. 9, 91 S.Ct. 1148, 1155 n. 9, 28 L.Ed.2d 388 (1971) (White, J., *quoting* W.V. Schaefer, *The Control of "Sunbursts": Techniques of Prospective Overruling,* 42 N.Y.U.L.Rev. 631, 645 (1967));

*see United States v. Johnson,* 457 U.S. 537, 556 n. 17, 102 S.Ct. 2579, 2591, 73 L.Ed.2d 202 (1982). Such a consideration in the instant case, for example, might be the number of pending cases on the trial judge's calendar, which, according to the 1984 Annual Report of the Second Circuit, averaged 758 cases for each of the three judges in the Western District. Other time consuming matters, which are represented by over half-a-hundred docket entries, are discussed generally in the district court's interim opinion reported at 536 F.Supp. 1301 and in that court's unreported Memorandum and Order of November 30, 1984. Here, as always, we should be careful not to put one of our district court judges in a position where he is more sinned against than sinning.

Unfortunately, my brothers in the majority do not content themselves with faulting the district judge for following *Welyczko* to the letter.[1] For some reason which I am unable to fathom, they have seen fit to visit the sins of the district judge upon the defendants. In my opinion, the only way in which one could begin to justify such a result would be to assume that the defendants had some means of speeding up Judge Elfvin's judicial functions that were unavailable to the plaintiff. That assumption would, of course, be erroneous. Mandamus relief is as available to a plaintiff as it is to a defendant.

It is quite obvious that the plaintiff never considered time to be of the essence in this proceeding. Plaintiff delayed almost six years in bringing suit, and it does not appear that he took any steps thereafter to expedite the disposition of his claim. In fact, a principal cause of the thirty-four-month interval between the end of the trial

---

1. Other courts have interpreted the *Welyczko* opinion in the same manner as Judge Elfvin did. In *Smith v. General Motors Corp.,* 747 F.2d 372, 375 (6th Cir.1984), Judge Martin, writing for eight members of an en banc court, said:

> Nevertheless, we agree with the Second Circuit that use of the *Chevron* analysis is not appropriate here because the Supreme Court implicitly held in *DelCostello* that the statute of limitations should be applied retroactively

by barring the claim that was in front of the Court.

*See also Campbell v. McLean Trucking Co.,* 592 F.Supp. 1560, 1562 (E.D.N.Y.1984). Despite the majority's assertions to the contrary, it seems to me that, when one panel of this Court holds that a *Chevron Oil* analysis is inappropriate when applying the *DelCostello* rule and a second panel holds that it is appropriate, the second panel is effectively overturning the holding of the first.

and the district court's interim decision on liability was the plaintiff's twenty-month delay in submitting his proposed findings of fact and conclusions of law. In stating that an appeal on the merits should have been decided in 1980, the majority does not explain how this could have been done when plaintiff's proposed findings and conclusions were not submitted to the district court until February 16, 1981. It is noteworthy that plaintiff's brief in this court contains no criticism of the district court for the delay which is the cornerstone of the majority's decision to reverse.

The majority treats *Welyczko* as if that case differed from the instant one in moving expeditiously from the filing of the complaint to its dismissal. In fact, that is not what happened. Welyczko sought recovery from his employer and his union for his allegedly wrongful discharge which occurred in 1975. He brought his action in New York State Supreme Court on March 13, 1981. The case was removed to the United States District Court for the Northern District of New York on June 18, 1981, where issue was joined on July 6, 1981. Almost two years elapsed thereafter before there was another entry in the district court's docket sheet. That entry simply noted the case's appearance on the dismissal calendar. Two months later, *DelCostello* was decided, and, ten months later, the complaint was dismissed.

Had there been no two-year hiatus in *Welyczko*, it is possible that a final judgment would have been entered before *DelCostello* was decided. However, this would not have dictated a different result. This Court would have had to apply the law that was in effect at the time it rendered its decision, despite the fact that the law was changed after judgment was entered in the district court. *Bradley v. School Board of the City of Richmond,* 416 U.S. 696, 714–15, 94 S.Ct. 2006, 2017–18, 40 L.Ed.2d 476 (1974); *United States v. Alabama,* 362 U.S. 602, 604, 80 S.Ct. 924, 926, 4 L.Ed.2d 982 (1960) (per curiam); *Hospital Association of New York State, Inc. v. Toia,* 577 F.2d 790, 796–97 (2d Cir.1978). That is what we should do in the instant case. *See Bradley v. General Motors Corp.,* 463 F.2d 239, 240 (6th Cir.1972) (per curiam).

Assuming that, contrary to the crystal-clear holding of *Welyczko,* we must weigh "the inequity imposed by retroactive application", the third factor in the *Chevron Oil* analysis, 404 U.S. at 107, 92 S.Ct. at 355, the district court's judgment nonetheless should be affirmed. Because the responsibility for whatever delay has occurred must be attributed in large measure to the plaintiff himself, it would not be inequitable to apply the statute of limitations retroactively to bar his claim. *Perez v. Dana Corporation, Parish Frame Division,* 718 F.2d 581, 588 (3d Cir.1983) (no inequity in view of twenty-three month delay in bringing suit); *Murray v. Branch Motor Express Co.,* 723 F.2d 1146, 1148 (4th Cir.1983) (no inequity where plaintiff delayed 29 months).

In *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), Justice Rehnquist, writing for the majority, stated that the union grievance procedure "could easily become unworkable if a decision ... could suddenly be called into question as much as six years later." *Id.* at 64, 101 S.Ct. at 1564–65. Justice Stewart, concurring, stated that "Congress enacted § 10(b) of the NLRA to protect continuing collective-bargaining systems from delayed attack." *Id.* at 68, 101 S.Ct. at 1567.

In the instant case, there has been not only a "delayed attack", but also a less than zealous prosecution of the attack once it was commenced. Whatever fault for the latter might be attributable to the district court, none can be attributed to the defendants. Under the circumstances, it seems to me that all of the equities are with the defendants.

Because I believe that the majority's sua sponte opinion is unfair to Judge Kaufman, who wrote a lucid opinion in *Welyczko,* to Judge Elfvin, who accurately interpreted that opinion, and to the defendants, who, through no fault of their own, are denied

the benefit of the six-month limitation period prescribed by Congress, I respectfully dissent.