Samuel E. SONG, Plaintiff,

v.

IVES LABORATORIES, INC., A DIVISION OF AMERICAN HOME PRODUCTS CORPORATION, Defendant.

No. 86 CV 4358 (KMW).

United States District Court,
S.D. New York.

April 13, 1990.

Raymond F. Gregory, New York City, for plaintiff.

David Dunn, Davis, Markel & Edwards, New York City, for defendant.

## MEMORANDUM OPINION

KIMBA M. WOOD, District Judge.

Plaintiff Dr. Samuel Song was hired in 1975 as the Associate Medical Director at Ives Laboratories. Beginning in July 1981, disputes arose involving plaintiff's role at Ives until, in October 1983, plaintiff was notified that his employment was to be terminated. On May 30, 1984, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In accordance with its own regulations, the EEOC referred plaintiff's charge to the State Division of Human Rights ("SDHR").[1] SDHR did not perform its own investigation of plaintiff's allegations. After the EEOC issued plaintiff a Notice of Right to Sue, SDHR, on September 26, 1986, dismissed plaintiff's complaint on grounds of administrative convenience.

Plaintiff then commenced this action against defendant Ives Laboratories, Inc., alleging that he was discharged because of his Korean national origin in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New York State Human Rights Law, N.Y. Exec.Law § 296 (McKinney 1982 & Supp. 1989).

Defendant moves for partial summary judgment, seeking dismissal of plaintiff's Section 1981 claim and the pendent Human Rights Law claim. Defendant argues that plaintiff's Section 1981 claim is no longer viable in light of the Supreme Court's recent decision in *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Defendant moves to strike plaintiff's Human Rights Law claim on the basis of a recent New York intermediate appellate court decision that defen-

dant argues bars plaintiff's claim on the ground of election of remedies. For the reasons that follow, defendant's motion to dismiss the Section 1981 claim is granted, but its motion to dismiss the Human Rights Law claim is denied.

### I. *Plaintiff's Section 1981 Claim*

■ Plaintiff's complaint alleges discrimination in the workplace, beginning six years after his employment commenced. In *Patterson,* the Supreme Court held that Section 1981 "extends only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment." 109 S.Ct. at 2372. Plaintiff concedes that because he is not alleging discrimination in the formation of his contract, *Patterson* would ordinarily bar his Section 1981 claim. He argues, however, that *Patterson* should not be applied retroactively. Citing a single district court opinion, *Gillespie v. First Interstate Bank,* 717 F.Supp. 649, 651 n. 1 (E.D.Wis. 1989), plaintiff contends that in light of the substantial time and money plaintiff has invested in prosecuting the Section 1981 claim, it would be unfair and inequitable to apply *Patterson* retroactively.

■ *Patterson* must be applied retroactively in this case. The general rule is that cases are decided "in accordance with the law existing at the time of decision." *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 662, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987). The Supreme Court has adopted a three-prong test to determine, in most cases, whether an exception should be made to the general rule of retroactive application. *See Chevron Oil Co. v. Huson,* 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971).[2] There are, however,

---

1. Title VII provides that where there exists a state or local law prohibiting the unlawful employment practice alleged, no charge may be filed with the EEOC until "the expiration of sixty days after proceedings have been commenced under the state or local law...." 42 U.S.C. § 2000e–5(c). To assist complainants who unwittingly fail to first file a charge pursuant to the statute with the state or local agency, the EEOC routinely refers the complaint to

SDHR, which may conduct its own investigation. *See* 29 C.F.R. § 1601.13 (1989).

2. The test requires a court to balance three factors: 1) whether the new principle establishes a new rule of law by overruling clear past precedent upon which litigants have relied, 2) whether retroactive application will further or retard the rule's application, and 3) whether retroactive application will produce substantially inequitable results. *Chevron Oil,* 404 U.S. at

circumstances in which courts must apply new decisional law retroactively without applying the three-prong test. When the Supreme Court itself has given retroactive application to a newly-adopted principle "to govern the very claim at issue in the case before it," lower courts must do likewise, *without regard* to the *Huson* criteria. *Welyczko v. U.S. Air, Inc.*, 733 F.2d 239, 241 (2d Cir.), *cert. denied*, 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984). *See also Kofer v. Village of Pelham*, 710 F.Supp. 483, 485 (S.D.N.Y.1989) ("Judicial decisions, of course, always work retroactively unless a court specifically directs otherwise, as did the Supreme Court in *Huson*."). In *Patterson*, the Supreme Court, by affirming the Circuit Court of Appeals' dismissal of plaintiff's claim, applied retroactively its ruling concerning the scope of Section 1981 and thus barred the very claim that was in front of the Court. Therefore, this Court is without discretion

even to apply the *Huson* test, and plaintiff's Section 1981 claim must be dismissed.[3]

## II. *Plaintiff's Pendent State Law Claim Under the Human Rights Law*

■ Defendant argues that plaintiff's pendent state law claim under the state Human Rights Law, N.Y.Exec.Law § 296, is barred by the doctrine of election of remedies. Section 297(9) of the Human Rights Law provides, in relevant part:

Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, unless such person had filed a complaint hereunder [with the State Division for Human Rights] or with any local commission on human rights, ... provided that, where the division has dismissed such complaint on the grounds of admin-

---

106, 92 S.Ct. at 355; *see also Byrne v. Buffalo Creek R.R. Co.*, 765 F.2d 364, 366 (2d Cir.1985) (discussing *Huson* criteria).

**3.** In *Byrne v. Buffalo Creek R.R. Co.*, 765 F.2d 364 (2d Cir.1985), the Second Circuit Court of Appeals appeared to retreat somewhat from its stance in *Welyczko* by holding that a *Huson* analysis *was* appropriate even though in the relevant Supreme Court decision, the Supreme Court itself had applied its new rule to the case before it. *See also Gargiul v. Tompkins*, 790 F.2d 265, 274 (2d Cir.1986) (citing *Huson* criteria as reason for applying new Supreme Court rule retroactively; no mention of holding in *Welyczko* ). However, in *Byrne*, the lawsuit was filed in 1975, a trial on the merits took place in 1979, and the district court, for "no good reason," did not render its decision until 1982, and then left the matter open (to allow the parties to make submissions concerning damages) until after a 1983 Supreme Court decision that worked to bar the claim. *Byrne*, 765 F.2d at 365–66. The Court of Appeals held that retroactive application under those circumstances "would work a gross injustice because of the large amount of time and money the parties have already invested in this lawsuit, which [plaintiff] filed nearly eight years prior to the Supreme Court's decision...." *Id.* at 366. Thus, only when there exist "special circumstances" would the three-factor *Huson* analysis be appropriate. *Id.*

This Court is not persuaded that there exist "special circumstances" in the instant case that warrant a departure from the Second Circuit

rule that where the Supreme Court *itself* applies a new rule in the case before it, lower courts must automatically apply the new rule, without regard to the *Huson* criteria. Here, unlike in *Byrne* and the district court case relied on by plaintiff, *Gillespie*, 717 F.Supp. at 651 n. 1, there has been no trial on the merits that would result in gross injustice being worked by application of a new rule of law. In addition, the instant lawsuit was filed in 1986 and thus has not been pending for eight years, as was the case in *Byrne*.

Moreover, even were this Court to apply the three-part *Huson* balancing test, retroactive application of the holding in *Patterson* in this case would be proper: although *Patterson* arguably established a new rule of law, *see Thompson v. Johnson & Johnson Management Information Center*, 725 F.Supp. 826, 827 (D.N.J.1989), retroactive application would further, not retard, the new ruling's operation of limiting the overlap between Section 1981 and Title VII claims, *id.*, and would not produce substantially inequitable results because 1) plaintiff would still have a Title VII remedy, and because 2) most of plaintiff's time and money expended in discovery relates equally to his Title VII and Section 1981 claims. Several courts have held that *Patterson* should be applied retroactively, for substantially these reasons, applying the *Huson* test. *See id.; Carroll v. General Accident Ins. Co. of America*, 891 F.2d 1174 (5th Cir.1990); *Brackshaw v. Miles, Inc.*, 723 F.Supp. 60 (N.D.Ill.1989); *Morgan v. Kansas City Area Transp. Authority*, 720 F.Supp. 758 (W.D.Mo.1989); *Williams v. National R.R. Passenger Corp.*, 716 F.Supp. 49 (D.D.C. 1989).

istrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed.

Under this section, an aggrieved plaintiff has the option of instituting either judicial or administrative proceedings, but not both. Once a particular procedure is invoked, a claimant is subsequently barred from electing any other remedy, unless SDHR dismisses the complaint for administrative convenience. Filing an administrative complaint directly with the state or local agency thus ordinarily cuts off the complainant's right to resort to the state courts to redress human rights law violations. *See Emil v. Dewey,* 49 N.Y.2d 968, 428 N.Y.S.2d 887, 406 N.E.2d 744 (1980); *West v. Technical Aid Corp.,* 111 Misc.2d 23, 24, 443 N.Y.S.2d 318, 320 (Sup.Ct.1981).

Citing a recent decision of a New York state appellate court, *Scott v. Carter-Wallace, Inc.,* 147 A.D.2d 33, 541 N.Y.S.2d 780 (1st Dept.1989),[4] defendant contends that plaintiff's filing of a complaint with the EEOC constitutes a binding election of state law remedies that would bar the claim from being brought in state court. In *Carter-Wallace,* the court, overruling precedent, held that a plaintiff who files a charge of discrimination with the EEOC, which in turn refers the complaint to SDHR, is barred from instituting an action in state court under the Human Rights Law because "[t]he right to bring an action in state court should not depend on which agency the grievant files with, the decision to file with one rather than the other being more likely than not fortuitous." *Id.* 541 N.Y.S.2d at 780. Put simply, the court held that the EEOC's referral of the claim to the state agency serves as an effective election of remedies under section 297(9).

In the instant case, plaintiff Samuel Song filed his claim of discrimination with the EEOC, which in turn referred it over to SDHR. SDHR, on September 26, 1986, ordered dismissal of the complaint "on the grounds of administrative convenience." Defendant argues that, in light of *Carter-Wallace,* Song must be deemed to have elected his remedies under the Human Rights Law, and that a state court would now be obliged to dismiss his complaint, and thus that this Court must also dismiss the state claim.

*Carter-Wallace* does not require dismissal of plaintiff's Human Rights Law claim. Section 297(9) of the Human Rights Law provides that "where the Division has dismissed such complaint on the grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed." New York courts interpreting this language have held that an administrative convenience dismissal does not bar a complainant from maintaining the same type of action in state court. *See, e.g., Pan American Airways, Inc. v. New York Human Rights Appeal Bd.,* 61 N.Y.2d 542, 548–49, 475 N.Y.S.2d 256, 259, 463 N.E.2d 597, 600 (1984). Indeed, in *Carter-Wallace,* the court explicitly referred to this exception and stated that an election of remedies has *not* taken place when "an administrative proceeding is dismissed on the ground of administrative convenience, in which event a court action may then be commenced (Executive Law § 297[9])." *Carter-Wallace,* 541 N.Y.S.2d at 781. Federal courts in New York have recognized that because state courts may still entertain such claims, administrative convenience dismissals do not prevent the exercise of pendent jurisdiction over Human Rights Law claims. *See Giuntoli v. Garvin Guybutler Corp.,* 726 F.Supp. 494 (S.D.N.Y.1989); *Sprott v. Avon Products, Inc.,* 596 F.Supp. 178, 184 (S.D.N.Y.1984); *see also Koster v. Chase Manhattan Bank, N.A.,* 609 F.Supp. 1191, 1196 (S.D.N.Y.1985); *Meschino v. International Tele-*

---

**4.** Although only the decisions of New York's highest court are binding on this Court, a federal court may not disregard an intermediate appellate court decision "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. American Telephone and Telegraph Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940).

This Court has been presented with nothing indicating that *Carter-Wallace* would not be followed by New York's Court of Appeals; thus, *Carter-Wallace* will be assumed to correctly reflect New York law. *See Lehtinen v. Bill Communications, Inc.,* No. 88 Civ. 8257, 1989 WL 129533 (S.D.N.Y. Oct. 24, 1989) (applying *Carter-Wallace* as applicable New York law).

*phone & Telegraph Corp.,* 563 F.Supp. 1066, 1074 (S.D.N.Y.1983). Therefore, because Song could still maintain his Human Rights Law action in state court, defendant's reliance on *Carter–Wallace* is misplaced.

■ The doctrine of pendent jurisdiction provides ample authority for entertaining plaintiff's state claim. In *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court broadly defined the power of a federal court to hear a pendent state law claim:

> Pendent jurisdiction, in the sense of judicial *power,* exists whenever there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made ... U.S. Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case."

*Id.* at 725, 86 S.Ct. at 1138. Provided that the federal and state claims "derive from a common nucleus of operative fact," then "there is *power* in federal courts to hear the whole." *Id.* Because there is no dispute in the instant case that plaintiff's federal and state claims derive from a "common nucleus of operative fact," this Court plainly has the power to entertain plaintiff's state claim.

Application of the doctrine of pendent jurisdiction, as the Supreme Court has noted, is discretionary. *Id.* While a court possesses the inherent power to decide a case, it need not exercise that power. The Court must balance "considerations of comity, fairness to the litigants, judicial economy, and the avoidance of needless decisions of state law." *Federman v. Empire Fire and Marine Ins. Co.,* 597 F.2d 798, 809 (2d Cir.1979). Dismissal of the state claim is the recommended procedure "if state issues predominate or jury confusion is likely due to divergent legal theories, and in cases where the federal claim is disposed of prior to trial." *Id.*

These discretionary factors militate in favor of the exercise of pendent jurisdiction in this case. First, considerations of comity and federalism are not implicated where, as here, the state agency has dismissed the complaint on the ground of administrative convenience and there is no pending proceeding before the agency. If, instead, plaintiff had appeared before the state agency and the state agency had become heavily involved in the investigation of plaintiff's discrimination charge, the Court would be reluctant to interfere with the ongoing state administrative proceeding. *Cf. Ohio Civil Rights Comm'n v. Dayton Christian Schools,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (in state administrative proceedings that are coercive, rather than remedial, federal courts must abstain). However, such concerns are not present in the instant case where the state agency has conducted no investigation of plaintiff's allegations.

Second, a rule barring the exercise of pendent jurisdiction in this type of Title VII case would work undue hardship on litigants and would waste judicial resources by fostering duplicative litigation. Because Title VII has been construed as vesting jurisdiction exclusively in the federal courts, *see Bradshaw v. General Motors Corp.,* 805 F.2d 110, 112 (3d Cir.1986); *Dyer v. Greif Bros., Inc.,* 766 F.2d 398, 399–400 (9th Cir.1985); *but see Donnelly v. Yellow Freight System, Inc.,* 874 F.2d 402, 405–09 (7th Cir.), *cert. granted,* —— U.S. ——, 110 S.Ct. 363, 107 L.Ed.2d 349 (1989), the claims could not be brought together in state court, leaving an aggrieved plaintiff with no choice but to proceed in two separate forums. Requiring litigation of these claims in two forums adds unnecessary expense for the litigants, and adds unnecessary volume to already overloaded judicial systems.

By contrast, there is no indication in this case that deciding plaintiff's cause of action would require delving into uncharted areas of state law. Nor is there any indication that state issues will predominate. Although some courts have declined to exercise pendent jurisdiction over state Human Rights Law claims on the ground that jury confusion is likely, *compare Barbetta v.*

*Chemlawn Services Corp.*, 669 F.Supp. 569, 571 (W.D.N.Y.1987) (dismissing pendent human rights claim because "[j]ury confusion is highly likely"); *Alveari v. American Int'l Group, Inc.*, 590 F.Supp. 228, 232 (S.D.N.Y.1984) (refusing to retain jurisdiction over state claim because such retention would "inevitably add to the proof in this case and complicate what can be a simple, straightforward non-jury case") *with Giuntoli v. Garvin Guybutler Corp.*, 726 F.Supp. 494 (S.D.N.Y.1989) (exercising pendent jurisdiction over pendent Human Rights Law claim); *Lehtinen v. Bill Communications, Inc.*, No. 88 Civ. 8257 (S.D.N.Y. Oct. 24, 1989) (argument in favor of pendent jurisdiction "impresses the Court as sensible and reasonable"); *Selbst v. Touche Ross & Co.*, 587 F.Supp. 1015, 1017 (S.D.N.Y.1984) (exercising pendent jurisdiction), at this point, the Court has no reason to believe that jury confusion is likely to occur in this case. Therefore, the Court finds that the exercise of pendent jurisdiction in this case is proper.[5]

### III. *Conclusion*

For the foregoing reasons, defendant's motion to dismiss plaintiff's Section 1981 claim is granted, and defendant's motion to dismiss plaintiff's pendent Human Rights Law claim is denied.

SO ORDERED.

---

**5.** The Court notes that the issue of whether Congress, in enacting Title VII, intended to negate the exercise of pendent claim jurisdiction has been the subject of some dispute within the federal courts. Those courts passing on the issue are deeply divided. *Compare Jones v. Intermountain Power Project*, 794 F.2d 546, 552 (10th Cir.1986) (concluding that Title VII "reveals nothing to suggest an intent to negate pendent jurisdiction"); *Kitchen v. Chippewa Valley Schools*, 825 F.2d 1004, 1010 (6th Cir. 1987) (pendent jurisdiction may be exercised where Title VII claim forms part of the basis for federal question jurisdiction, but court expressly reserves decision on question whether such jurisdiction is proper where Title VII is the *only* federal claim pleaded); *Flowers v. Rego*, 675 F.Supp. 1165, 1167 (E.D.Ark.1987) (adopting reasoning of *Jones* and exercising jurisdiction); *Yousef v. Borman Foods, Inc.*, 667 F.Supp. 443, 445 (E.D.Mich.1987) (same) *with Davis v. Devereux Foundation*, 644 F.Supp. 482, 487 (E.D.Pa. 1986) (refusing to exercise pendent jurisdiction because that "would frustrate the clear congressional mandate of adjudicating Title VII claims in an expedited manner"); *Mongeon v. Shellcraft Industries, Inc.*, 590 F.Supp. 956, 961 (D.Vt.

1984) (Congress intended to negate the exercise of pendent jurisdiction in enacting Title VII); *Jong-Yul Lim v. International Inst. of Metro. Detroit, Inc.*, 510 F.Supp. 722, 726 (E.D.Mich. 1981) (same). The Second Circuit Court of Appeals has not passed on this issue.

Although this issue was not raised by defendant, the Court has considered it, and agrees with those courts that have concluded that Congress did not intend to negate the exercise of pendent jurisdiction in Title VII cases. The mere fact the Title VII's remedial scheme diverges from state schemes does not evidence a congressional intent that courts should refuse to exercise pendent jurisdiction over state claims. *See Jones, supra.* *See also A/S D/S Svendborg v. United States*, 653 F.Supp. 283, 286 (S.D.N.Y. 1986) (court in determining whether to exercise pendent jurisdiction must examine whether Congress "intended to force plaintiffs to bifurcate litigation arising out of a single core of operative fact"). Rather, federal courts should take such remedial differences into account on a case by case basis in deciding whether the discretionary exercise of pendent jurisdiction is appropriate.