Gene I. MESH, derivatively, on behalf of himself and all other shareholders of General Host Corporation, which similarly situated shareholders of General Host Corporation, constitute a class, Plaintiffs,

v.

The GOLDFIELD CORPORATION et al., Defendants.

The GOLDFIELD CORPORATION, Cross-Plaintiff,

v.

GENERAL HOST CORPORATION et al., Cross-Defendants.

Richard C. PISTELL et al., Defendants, Cross-Defendants and Third-Party Plaintiffs,

v.

Herman BECKER–FLUEGEL, Third-Party Defendant.

No. 70 Civ. 739.

United States District Court, S. D. New York.

Oct. 30, 1973.

Penn & Burns, New York City, for plaintiffs; Arthur S. Penn, Lawrence E. Fabian, Richard E. Burns, Franklin E. Tretter, New York City, of counsel.

Berman & Frost, New York City, for defendant The Goldfield Corp.; Michael N. Block, New York City, David B. Buerger, Pittsburgh, Pa., of counsel.

Doman, Spellman & San Filippo, New York City, for third-party defendant Herman Becker-Fluegel; James P. Beggans, Jersey City, N.J., of counsel.

Shearman & Sterling, New York City, for defendant Union Bank; George J. Wade, Lansing R. Palmer, New York City, of counsel.

Skadden, Arps, Slate, Meagher & Flom, New York City, for defendant General Host Corp. on the complaint; Barry H. Garfinkel, New York City, of counsel.

Lovejoy, Wasson, Lundgren & Ashton, New York City, for defendants Harris J. Ashton, C. Whitcomb Alden, Jr., and William P. Howe, Jr.; Edwin E. Mc-Amis, New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

This is an application by the plaintiff Gene I. Mesh, a shareholder of General Host Corporation ("Host"), for an order approving a proposed stipulation of settlement and for counsel fees in this shareholder's derivative action. The terms of the settlement have been agreed to by plaintiff[1] and defendants Union Bank, Host, Richard C. Pistell, Harris J. Ashton, Edwin C. McDonald, C. Whitcomb Alden, Jr., William P. Howe, Jr., and William F. Downey. Defendant Goldfield Corporation ("Goldfield") is not a party to the proposed settlement, and as a shareholder of Host, opposes it. For the reasons indicated below, the proposed stipulation of settlement is approved and counsel fees are awarded in the amount of $100,000.

The complaint alleges a complex conspiracy, among Union Bank, one of its directors, the interlocking directorates of Host and Goldfield, and Goldfield. The alleged result of the conspiracy was Host's purchase from Union Bank, for their full face value and accrued interest, of two notes, both in default, made by Goldfield and one of its subsidiaries, and guaranteed by Goldfield, in a total amount of $11,000,000. Host then agreed to extend the time for repayment of the Goldfield note, in return for an option to purchase within fifteen months, at market value, 437,700 shares of Host owned by Goldfield and pledged to Union Bank as collateral for the two notes. At issue in this lawsuit are not the facts of the transactions as such, but rather their purpose and effect. Plaintiff contends that the purchase of the notes and the Host shares was intended to and did enable the directors of Host to retain control of the corporation, that the bank received payment in full for notes in default which it would not otherwise have received, and that Goldfield profited by the extension of time for repayment of its obligations under the notes. Plaintiff maintains that the premiums thus paid for the Host shares were excessive, and Host should be reimbursed for the excess. As a second cause of action, plaintiff alleges that the Union Bank and the directors of Host and Goldfield, for their own personal benefit, caused Host to sell Armour and Company shares to Greyhound Corporation at a price lower than that paid by Host for the shares, and that Host should be reimbursed as well for this loss.

The individual defendants deny any wrongdoing, essentially maintaining that the transactions at issue were conducted in the exercise of their sound business judgment, and without any personal benefit to them. The corporate defendants likewise deny any wrongdoing. Goldfield has in fact interposed a cross claim, alleging that the option agreement was a device by Host to defraud it

---

1. As used herein, "plaintiff" refers to Mr. Mesh in both his derivative and representative capacities.

of the value of its 437,700 shares of Host stock. It contends that Goldfield had been offered over twice as much for the shares by a third party than Host eventually paid for them, and demands to be reimbursed for the difference. The settlement proposal does not affect this cross claim.

## I. *Stipulation of Settlement*

 The proposed settlement provides that Union Bank will confer specific economic benefits upon Host, in the interest of putting the controversy to rest. First, the bank will lend to Host the sum of $4,000,000 for a term of four years at the bank's prime interest rate in effect from time to time. This loan is to be unsecured and will not require the deposit of any compensating balances. The proceeds of the loan are to be applied to repay existing short-term debt incurred by Host to repurchase its 7% debentures. Second, a claim against Host by Union Bank for legal fees in the amount of $92,000 in connection with certain Canadian litigation is to be settled by a payment by Host to the bank of $60,000. Host's financial officers have estimated the value to Host of the proposed settlement at $422,000, based upon the cost to Host of obtaining a comparable loan elsewhere.

Counsel for plaintiff have conducted extensive discovery, including numerous depositions and examination of hundreds of documents. They have determined that difficult issues of intent and motivation exist, and that conclusive proof of plaintiff's allegations is unavailable. They have also concluded that the Union Bank is the only substantial defendant, and that, therefore, the likelihood of recovery from the other defendants, even should plaintiff obtain a judgment, is minimal. Additionally, the course of the litigation is rendered more uncertain and complicated by the cross claims interposed by Goldfield. In view of these various problems and the inherent uncertainty of success at trial they have

concluded that the proposed settlement is in the best interests of Host.

Goldfield is the only shareholder of Host to object to the proposed settlement, and its objections are, at best, imprecise. Goldfield appeared at the hearing held September 10, 1973, taking the position that the proposal was of doubtful economic value to Host, questioning Host's need to borrow at this time, and maintaining that a settlement arrangement between Union Bank and Host was unsatisfactory, in view of its contentions that the real harm was done by the bank to Goldfield, not Host. At the hearing Host demonstrated to the satisfaction of the Court its need for cash and the advantages of the terms offered by Union Bank.

Although its standing to object is predicated on its status as a shareholder of Host, Goldfield's objections appear designed to avoid consequences prejudicial to its position as a cross-claimant. Approval of the settlement does not, however, decide any issues of liability of any parties to the suit, and dismissal of plaintiff's claims is without prejudice to those of Goldfield.

Upon consideration of all the above factors, the Court finds that settlement of this branch of the litigation upon the proposed terms is in the best interests of the parties. Accordingly, the stipulation of proposed settlement is approved.

## II. *Counsel Fees*

 Annexed to the proposed settlement is a request by plaintiff's attorneys for counsel fees in the amount of $200,000, inclusive of disbursements. As part of the stipulation of settlement defendants agreed not to contest the award of fees in the amount of $100,000. For the reasons discussed below, the Court finds $100,000 to be a reasonable fee.

The parties do not contest the amount of time spent by counsel nor the high quality of the work performed. They disagree rather over the value to Host of

the settlement which has been negotiated. Plaintiff has presented the opinions of two experts to the effect that the economic benefit to Host of the loan on the terms proposed is in the range of $750,000. This figure is based upon the estimated cost of obtaining the use of the same amount of cash from other sources. In the opinion of Host's financial analysts the economic benefit of the entire settlement agreement is $422,000. Both parties then apply a percentage figure of 20–25% to arrive at a suggested amount.

In determining reasonable counsel fees in derivative actions several factors should be considered. Substantial benefit to the corporation through the attorneys' efforts must be shown. Schechtman v. Wolfson, 244 F.2d 537, 540 (2d Cir. 1957). In addition, the contingent nature of the fee should be considered. Perlman v. Feldmann, 160 F.Supp. 310 (D.Conn.1958); G. Hornstein, "Legal Therapeutics: The 'Salvage' Factor in Counsel Fee Awards," 69 Harv.L.Rev. 658 (1956). Furthermore, it is not always necessary that a suit be brought to successful completion in order to recover counsel fees. *Schechtman, supra.* Finally, the Court should also consider the hours reasonably expended by counsel, the complexity of the legal issues, and the skill of the attorneys. Newmark v. RKO General, Inc., 332 F.Supp. 161 (S.D.N.Y. 1971).

Although counsel have spent 1,484 hours in the conduct of this litigation, the course of which has been complicated by the introduction of cross claims and third and fourth party claims, the Court agrees with Host's financial analysts that the economic benefit of the settlement to Host is $422,000. Plaintiff has collected a number of cases in which the award of fees amounted to approximately 25% of the recovery. This Court finds that such a percentage calculation, while relevant, is only one factor to be considered in determining reasonable attorneys' fees. After consider-

ing all of the foregoing factors, the Court grants the application by plaintiff's attorneys for counsel fees and disbursements to the extent of $100,000.

Settle order on notice.