Seymour **SHLOMCHIK**, a limited partner in Richmond 103 Equities Co., a New York Limited Partnership, for himself and on behalf of the partnership, Plaintiff,

v.

**RICHMOND 103 EQUITIES CO.**, a New York Limited Partnership,

and

**William S. Hack and Pearl H. Hack**, individually and as general partners of Richmond 103 Equities, a New York Limited Partnership, Defendants.

No. 84 Civ. 0053 (BN).

United States District Court, S.D. New York.

April 16, 1991.

As Amended May 15, 1991.

Karen A. von Dreusche, Bala Cynwyd, Pa., for plaintiff.

Law Offices of Melvin J. Kalish (Michael Margello, of counsel), New York City, for defendants.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

NEWMAN, Senior Judge, United States Court of International Trade, sitting as a United States District Court Judge by designation:

## INTRODUCTION

This is an action brought by Seymour Shlomchik, one of nine limited partners in Richmond 103 Equities Co. ("R 103), a New York limited partnership, individually and derivatively on behalf of R 103, against the partnership and William S. Hack and his wife, Pearl H. Hack, individually and as general partners of R 103. Plaintiff seeks recovery of compensatory and punitive damages and other relief for *inter alia,* various breaches of fiduciary duty by the general partners, waste, improper self-dealing, fraud and securities laws violations. An interlocutory order, discussed *infra,* was entered by the court on April 23, 1987.

Presently before the court are three matters for resolution prior to the entry of a final judgment: (1) the issue of jurisdiction, reargued in supplemental briefs submitted by the parties at the request of this court; (2) the Magistrate's Report[1] and Recommendations of December 6, 1990 on the audit and accounting directed by the interlocutory order; and (3) plaintiff's application for an award of expenses and counsel fee, in accordance with the interlocutory order.

## BACKGROUND

Shlomchik's thirty-one page twelve count complaint, filed on January 4, 1984, alleges both state law and federal question claims, the latter arising under the securities laws (*see* § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and § 78aa and Rule 10b(5)); and the Racketeer Influenced and Corrupt Organizations Act ("RICO") (*see* 18 U.S.C. §§ 1961 *et seq.*). *See also* 28 U.S.C. § 1331.

Defendants' answer was filed on March 29, 1984, and on May 1, 1984 this case was reassigned from Chief Judge Constance Baker Motley to Judge Gerard L. Goettel. Thereafter, in July 1984, plaintiff sought class action certification under Fed.R.Civ.P. 23.2 (which was denied without prejudice to renewal) and filed several discovery motions.

On January 6, 1986 the case was reassigned from Judge Goettel to the writer. After holding a pretrial conference and receiving pretrial memoranda of law, proposed findings and conclusions, a bench trial was conducted on June 9, 10 and 11 1986. Decision was reserved.

Following completion of the filing of post-trial proposed findings, conclusions and memoranda of law by the parties on October 31, 1986, this court rendered its decision and opinion on December 15, 1986. 662 F.Supp. 365. The decision, *inter alia,* rejected defendants' jurisdictional challenge, sustained plaintiff's derivative causes of action for breach of fiduciary duty, improper self-dealing, etc. and awarded damages in the aggregate sum of $203,-332.87, expenses, including counsel fees, and directed an audit and accounting of certain records of defendants by a United States Magistrate acting as a Special Master to hear and report in accordance with 28 U.S.C. § 636(b)(2).

On January 27, 1987 a judgment in conformance with the decision of December 15, 1986, final as to an award of damages in the aggregate sum of $203,332.87 on certain derivative causes of action and interlocutory as to other matters, was entered pursuant to Fed.R.Civ.P. 54(b). The judgment entered on January 27, 1987 was interlocutory respecting the award of expenses and attorney's fees to plaintiff's counsel and the audit and accounting of the partnership's checkbook stubs referred to the Magistrate.

In accordance with the January 27, 1987 judgment, the District Court Executive referred the audit and accounting to Honorable Sharon E. Grubin, United States Magistrate.

In February 1987, the parties filed cross-appeals concerning the final aspects of the January 27, 1987 judgment, essentially the award of damages on the derivative causes of action.

Subsequently, pursuant to the stipulation and joint application of the parties on

---

1. The term "Magistrate" is used throughout this opinion, inasmuch as the change of title to United States Magistrate Judge, Pub.L. No. 101–650, § 321, eff. December 1, 1990, 101st Cong., 2nd

Sess., 104 Stat. 5117, had not occurred at the time of the reference and accounting proceedings.

March 16, 1987, the cross appeals were withdrawn and the Second Circuit entered an order on March 19, 1987 remanding the action to this court for further proceedings to remove the Rule 54(b) Certification from the January 27, 1987 judgment thereby rendering it entirely interlocutory pending the audit and accounting before the Magistrate and entry of a final judgment.

As requested by the parties' joint motion of April 7, 1987, on April 23, 1987 this court issued an order that, *inter alia,* vacated the partially final judgment entered on January 27, 1987, including the Rule 54(b) Certification, and in lieu thereof granted the following interlocutory relief: an audit and accounting of the transactions between R 103 and Shawnee Equities recorded in the partnership's checkbook stubs by a Magistrate serving as a Special Master (28 U.S.C. § 636(b)(2)) to hear and report to the court as to any further sums that should be awarded to R 103; an award to plaintiff's counsel of reasonable fees and expenses, for which application could be made after completion of the accounting proceedings; and entry of a judgment for Shlomchik in his derivative capacity on behalf of the limited partnership against the defendant general partners, jointly and severally, in an aggregate sum of $203,332.87, plus interest.

As previously mentioned, the issues relating to the Magistrate's Report and Recommendations and the award of expenses and counsel fees are now before the court for resolution.

Nearly four years after the reference on December 6, 1990, this court received the Magistrate's Report and Recommendations on the accounting. Concerned about the inordinate delay during the pendency of the accounting, both this court and plaintiff's counsel made periodic inquiries of the Magistrate and the Magistrate's office about the status of the matter. In a letter of July 9, 1990 from the Magistrate to plaintiff's counsel (attached to plaintiff's memorandum of law), the Magistrate expressed her apology for the delay in completing the accounting proceedings due to the press of other matters and a lengthy trial. The protracted accounting proceedings are of significance in this case regarding the juris-

dictional issue because plaintiff now attributes a major portion of the blame for this court's problematical diversity jurisdiction (as discussed *infra*) on the delay by the Magistrate in the accounting proceedings, during which time there was a change in the law in this Circuit affecting actions by and against limited partnerships.

All of the parties' supplemental memoranda of law regarding the jurisdictional issue were received by March 11, 1991; the parties' submissions concerning plaintiff's application for an award of counsel fees and expenses and the Magistrate's Report and Recommendations were held in abeyance pending the supplemental briefing and review of the critical jurisdictional issue.

## JURISDICTION

■ The issue of jurisdiction is, of course, a threshold matter and was previously raised by defendants in their answer as an affirmative defense, briefed by the parties following the trial and addressed by this court in the decision of December 15, 1986. *See,* 662 F.Supp. at 370.

Plaintiffs predicate federal court jurisdiction over the state law claims on diversity of citizenship (28 U.S.C. § 1332(a)) and/or as pendent to the alleged federal question causes of action since, as contended by plaintiff, both the federal and state causes of action arise out of a common nucleus of facts.

In its opinion of December 15, 1986 (662 F.Supp. at 370), this court held that it has diversity jurisdiction citing *Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178 (2d Cir.1966), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966); *Smith v. Sperling,* 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957) and *Swanson v. Traer,* 354 U.S. 114, 77 S.Ct. 1116, 1 L.Ed.2d 1221 (1957). Moreover, this court also agreed with plaintiff's contention that it had federal question jurisdiction in conformity with 28 U.S.C. § 1331 and 15 U.S.C. § 78aa, as to plaintiff's causes of action under 15 U.S.C. § 78j(b) and Rule 10 b–5. In view of the holding favorable to plaintiff with regard to diversity jurisdiction, the court was not required to and did not reach the ques-

tion of pendent jurisdiction over plaintiff's state law causes of action. *See Shlomchik*, 662 F.Supp. at 370.

On February 8, 1991, counsel for the parties were contacted by the court and requested to submit supplemental memoranda of law on the issues of diversity jurisdiction in light of the Supreme Court's decision in *C.T. Carden v. Arkoma Associates*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), and pendent jurisdiction.

In light of the subsequent decision in *Carden,* the court must revisit its ruling on December 15, 1986 that diversity jurisdiction exists in this case following the authority of the Second Circuit's holding in *Colonial Realty Corp. v. Bache & Co., supra.* The court concludes that *Carden* has overruled *Colonial Realty Corp.,* and consequently we must now consider plaintiff's argument respecting pendent jurisdiction.

*Jurisdiction Based on Diversity of Citizenship*

At the time this action was filed, tried and decided and its interlocutory order was entered, *Colonial Realty* stood as a binding precedent *in this Circuit* with regard to the issue of diversity of citizenship in the case where a limited partnership is a party to the litigation. In *Colonial Realty,* Judge Friendly writing for the Second Circuit, said "a suit brought against a New York partnership must thus be considered to be against the general partners only and identity of citizenship between a limited partner and the plaintiff does not destroy diversity." 358 F.2d at 184. *See also Pappas v. Arfaras,* 712 F.Supp. 307, 309 (E.D. N.Y.1989); *Westville Holdings, Inc. v. American Petroleum Partners,* 592 F.Supp. 44 (S.D.N.Y.1984).

Understandably, when Shlomchik chose to bring this action in the District Court in 1984, he relied on *Colonial Realty.* Unfortunately for plaintiff, by the time this court received the Magistrate's Report and Recommendation concerning the audit and accounting, dated December 6, 1990, some six years after commencement of this action and four years after the reference, the United States Supreme Court had handed down its February 27, 1990 ruling in *Carden.*

In *Carden,* Arkoma Associates—a limited partnership organized under Arizona law—sued Carden and another individual, both Louisiana citizens, on a contract dispute in the District Court relying on diversity of citizenship for federal jurisdiction. Defendants moved to dismiss the action on the ground that one of Arkoma's limited partners was also a Louisiana citizen. The District Court denied the motion finding the requisite complete diversity. The Fifth Circuit affirmed, holding with respect to the jurisdictional challenge, that complete diversity existed because Arkoma's citizenship should be determined solely with reference to the citizenship of its general, but not its limited partners.

The Supreme Court, Justice Scalia writing for the five member majority, reversed the Fifth Circuit and remanded. 110 S.Ct. at 1022. The majority opinion holds that a limited partnership is not in its own right a "citizen" of the state where it is organized within the purview of the federal diversity statute (28 U.S.C. § 1332(a)); that consequently, where a limited partnership is a party to an action, a federal court must look to the citizenship of the limited as well as the general partners; and that since Arkoma had one limited partner which had a common citizenship with the defendants, complete diversity was lacking.

In *Carden,* the suit was brought by the partnership, whereas in the current case, absent a realignment of the defendant partnership as a party-plaintiff (*Cf. Smith* and *Swanson, supra*), the action is solely by Shlomchik, a citizen of Pennsylvania, against R 103, a New York limited partnership, and the Hacks, individually and as general partners, both citizens of New York. However, *Carden,* which looks to the citizenship of *all* the limited partners to determine whether there is *complete* diversity, is expressly applicable whether the action is brought by or *against* the partnership. 110 S.Ct. at 1019–21. The short of the matter: in determining the existence of complete diversity of citizenship where a limited partnership is a party to the law-

suit, the court must consider the citizenship of not less than all of the limited partners. At the commencement of this action, Shlomchik was a limited partner of R 103 and so far as the record shows, he has retained that status throughout this litigation. Consequently, R 103 has a Pennsylvania limited partner (Shlomchik), thus preventing complete diversity of citizenship of the plaintiff and defendants under the rationale of *Carden* that the court must consider the citizenship of not less than *all* of the partnership's limited partners. *See Curley v. Brignoli, Curley & Roberts Associates,* 915 F.2d 81, 84 (2d Cir.1990) (derivative action by limited partners against limited partnership and general partner), citing *Phillips v. Kula 200,* 83 F.R.D. 533 (D.Haw.1978) (no diversity jurisdiction where limited partners sued limited partnership; citizen of plaintiff partners attributed to partnership, destroying diversity).

In a recent decision of this court in *Norman Schibuk v. Poinciana–Regency Limited Partnership,* 88 Civ. 3361, decided March 20, 1991, 1991 WL 42200 1991 U.S. Dist. Lexis 3239, *motion for rehearing pending,* the action was dismissed for lack of diversity jurisdiction where Schibuk, a limited partner having a New York residence at the commencement of the action, brought suit against a Delaware real estate limited partnership having some New York limited partners. It was observed that "Schibuk's jurisdictional predicament [in light of *Carden*] is further exacerbated by the fact that not only is the limited partnership a party defendant to the action, but the suit was brought against it by one its limited partners, who at the commencement of the action, must be a diverse party for federal jurisdiction." (Slip Op. at 9). Consequently, following the rationale of *Carden* that the citizenship of *all* the limited partners of a limited partnership must be considered in determining the citizenship of the partnership, this court concluded that so long as a plaintiff in an action against the limited partnership retains his status as a limited partner of the defendant limited partnership, there cannot be diversity between the plaintiff and the limited partnership. *Curley v. Brignoli, Curley &*

*Roberts Associates,* 915 F.2d 81, 84 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1430, 113 L.Ed.2d 484 (1991).

■ Shlomchik sees no basis upon which to distinguish [*Carden*] on the merits from this case, but does argue that [*Carden*] should not be applied retroactively to this case because of the substantial inequitable result of such application" (pltf's memorandum, at 4). Defendants, on the other hand, maintain with some merit that "[p]laintiff's request that this Court forbear in 'retroactively applying' *Carden* is simply a request that the Court willfully neglect to apply the law" (deft's memorandum, at 2).

Courts, as a general rule, apply the law in effect at the time they render their decision. *Thorpe v. Housing Authority of Durham,* 393 U.S. 268, 281, 89 S.Ct. 518, 526, 21 L.Ed.2d 474 (1969); *Curley,* 915 F.2d at 83. However, this court recognizes the equitable principle in the general doctrine of nonretroactivity of judicial decisions, and that in appropriate circumstances courts may and do stipulate that their decisions should have only prospective application. The Supreme Court itself has expressly ruled in certain cases that in the interest of justice its own decision should be applied only prospectively, and has articulated a three-factor analysis that should be considered in the nonretroactivity question. *See e.g., Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 87, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982); *Cipriano v. Houma,* 395 U.S. 701, 706, 89 S.Ct. 1897, 1900, 23 L.Ed.2d 647 (1969); and *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971). *See also, Byrne v. Buffalo Creek Railroad Co.,* 765 F.2d 364 (2d Cir.1985).

Unquestionably, then, it is the prerogative of the Supreme Court in appropriate circumstances to make the three-factor analysis and expressly declare that its *own* holding should have no retroactive application. But it is altogether another matter for the District Court in a case before it to declare that a controlling Supreme Court decision should be given no retroactive application, as proposed by Shlomchik.

738

Where, as in *Carden,* the Supreme Court itself neither makes a three-factor nonretroactivity analysis nor otherwise intimates any intention that its ruling should be given only prospective effect, this court, obviously, should approach counsel's proposal to apply *Carden* only prospectively with extreme caution and restraint. This is not to say that there could never be an appropriate case for a lower court's refusal to give retroactive effect to a Supreme Court decision. *See e.g., Byrne v. Buffalo Creek R. Co., supra* (statute of limitations barring action), discussed *infra.* But plaintiff has failed to call our attention to a single instance wherein a *District Court* refused to retroactively apply *Carden* or any other decision of the Supreme Court.

In *Schibuk, supra,* plaintiff argued in avoidance of the *Carden* holding that at the commencement of the action in 1988, there was under "existing jurisprudence" diversity of citizenship between the parties. Notwithstanding the change in the law in this Circuit by *Carden,* the action was dismissed since: (1) the issue of subject matter jurisdiction had been raised as an affirmative defense in the answer, again in the pretrial order, and again in a post-trial submission prior to judgment; (2) irrespective of the foregoing, it is well settled that subject matter jurisdiction may not be conferred on the court by estoppel, waiver or the consent of the parties; and (3) Fed.R. Civ.P. 12(h)(3), requires that *"[w]henever* it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court *shall* dismiss the action"* (emphasis added).

Significantly, unlike the Supreme Court cases cited by plaintiff, *Carden* contains no three-factor nonretroactivity analysis or even hints at a nonretroactive application of its holding. Indeed, the *Carden* majority applied its holding retroactively in the very case before it, notwithstanding that eight of the thirteen jurists that considered the jurisdictional question (*viz.,* the District Court, the unanimous three-judge panel of the Fifth Circuit, 874 F.2d 226 (1988), and the four dissenting Justices in the Supreme Court) disagreed with the majority's holding. Plainly, then, the Supreme Court deci-

sions cited by plaintiff, wherein the Court expressly directed only a prospective application of its holding, do not require this court to give a nonretroactive application to *Carden,* and therefore, precedent or other authority for such an approach here must be found elsewhere.

*See also Curley,* discussed *infra,* wherein the Second Circuit applied *Carden* retroactively, but recharacterized derivative action as a class action and dropped limited partnership as a party to the action as a dispensable party to preserve diversity jurisdiction.

As suggested above, plaintiff's argument for the equities of a nonretroactive application of *Carden* is heavily bottomed on the period of time, nearly four years, that the accounting matter was pending before the Magistrate, during which period *Carden* changed the law in this Circuit. In that connection, plaintiff points up what he regards as the closely analogous circumstances facing the Second Circuit in *Byrne v. Buffalo Creek R.Co., supra.*

There, in 1985 Judge Lumbard declined in the interest of justice to give retroactive application to a six months statute of limitations which the Supreme Court had ruled in a 1983 decision was applicable to plaintiff's suit for wrongful discharge where: (1) in commencing the action in 1975, plaintiff relied on a six years statute of limitations which the Second Circuit in a 1970 decision had held was applicable to wrongful discharge cases; (2) plaintiff's case was not reached for trial by the District Court until 1979, four years after the complaint was filed; (3) the District Court then delayed for three years, until 1982, to enter an interlocutory decision finding defendants liable for damages and the action timely commenced; (4) a final judgment in the action was then further delayed by the District Court for determination of the proper assessment and apportionment of damages; and (5) during the latter period of delay, about one year, the Supreme Court in 1983 decided that it was the six months statute of limitations which governed wrongful discharge actions and *indicated its intention that the ruling be giv-*

*en retroactive effect.* In 1984, the Second Circuit held in another case, that the 1983 Supreme Court decision had retroactive effect.

In November 1984, the District Court in *Byrne,* believing that it was mandated to do so by the Circuit Court's earlier 1984 holding that the 1983 Supreme Court decision was to be applied retroactively, dismissed all pending wrongful discharge cases, including the *Byrne* action. The Second Circuit (notwithstanding its ruling giving the Supreme Court's 1983 decision retroactive application) reversed the District court's dismissal of the action.

The Second Circuit reasoned that it was compelled by considerations of equity, the District Court's determination of liability in plaintiff's favor and the time and money already expended in the litigation by the parties not to penalize Mr. Byrne for a change in the law during the inexcusable, unexplained and extraordinary delays over a period of nearly ten years by the District Court in resolving "simple issues" (*Id.,* at 366).

Thus, in *Byrne* the Court of Appeals felt compelled to "carve out a *limited exception* " to its previously mandated retroactive application of the 1983 Supreme Court decision barring the action (*Id.,* at 367, emphasis added).

This court declines to limit *Carden* to prospective application on the basis of *Byrne,* which did not involve the issue of subject matter jurisdiction, and which in any event we regard as expressly limited by the Second Circuit to the facts and circumstances of that case. Finding that *Carden* overrules *Colonial Realty Corp.,* and that the doctrine of nonretroactive application should not be applied in the case of *Carden,* the court is compelled to reverse its previous ruling that it has subject matter jurisdiction in this individual and *derivative action* predicated on diversity of citizenship.

Notwithstanding the foregoing, *Curley, supra,* recently decided by the Second Circuit on September 20, 1990 and not cited in the memoranda of law of either of the parties, suggests a novel, but viable, solution to the substantial impediment to diversity jurisdiction created by *Carden* in a situation where: (1) a derivative action brought by a limited partner on behalf of the partnership could appropriately have been brought as a class action pursuant to Fed.R.Civ.P. 23.2; (2) the derivative action may appropriately be recharacterized by the court *sua sponte* as a class action under Fed.R.Civ.P. 23.2; and (3) the limited partnership can be dismissed as a dispensable party-defendant to preserve diversity jurisdiction.

As noted above in the discussion of the background of this action, Shlomchik, indeed, sought Rule 23.2 class action certification before Judge Goettel, but by oral decision rendered from the Bench on October 5, 1984, Judge Goettel denied Shlomchik's motion, without prejudice to renew upon a proper showing. Judge Goettel found that Shlomchik had failed to satisfy the threshold requirement that the class action be in the best interest of the class and for failure to satisfy the numerosity requirement. *See* Order dated October 5, 1984. The motion was never renewed.

*Curley,* clearly disposes of both of the objections to Shlomchik's Rule 23.2 unincorporated association class action motion raised by Judge Goettel, *i.e.,* whether Shlomchik as representative of class would protect the interests of the association and its members, and the failure to satisfy the numerosity requirement. *See Id.,* at 85–87. The fact that Shlomchik never renewed his motion for class action certification nor suggested the *Curley* approach in his recent memorandum of law concerning diversity jurisdiction, does not relieve the court of its own "obligation to explore any promising avenue to the District Court's jurisdiction, whether or not it is suggested by the parties." *Id.,* at 85, citing *Association of Am. Medical Colleges v. Califano,* 569 F.2d 101, 111 (D.C.Cir.1977).

In short, after considering the entire record before the court and the rationale of *Curley* (which obviously were not available either to counsel or to Judge Goettel at the time of his 1984 ruling on plaintiff's application) and the memoranda of law filed by

the parties with Judge Goettel concerning plaintiff's Rule 23.2 motion, the court holds: (1) Shlomchik properly sought to bring this case as a rule 23.2 class action; and (2) recharacterization of the derivative action as a class action and dropping R 103 as a party-defendant would be appropriate. *Curley*, 915 F.2d at 87–8. However, such "major surgery" a la *Curley* is unnecessary at this juncture in view of the conclusion, *infra*, that the court has pendent jurisdiction.

### Federal Question and Pendent Jurisdiction

We reach plaintiff's argument that assuming the absence of diversity jurisdiction, there is in any event, pendent jurisdiction over the state law claims in this case. The court agrees.

As it was determined in the decision of December 15, 1986, 662 F.Supp. at 370, that this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) and federal question jurisdiction pursuant to the Securities Exchange Act of 1934, §§ 10(b), 27, 15 U.S.C. §§ 78j(b) and 78aa, Rule 10–5, and 28 U.S.C. § 1331, the question of "pendent jurisdiction" was not reached, and consequently must now be addressed.

Plaintiff argues that its federal question (*i.e.*, securities) claims in the complaint give the court "pendent jurisdiction" over all of plaintiff's state law claims since both the federal and state claims arise out of a common nucleus of facts, and therefore should be tried in a single case.

Defendants, on the other hand, vigorously urge dismissal of this action for lack of subject matter jurisdiction because plaintiff's federal claims are constitutionally insubstantial and unsubstantiated, "bordered on the frivolous," the state law claims so heavily predominate over the securities claims that the case is essentially a state claims action that should have been brought in State court, there is no common nucleus of operative facts, and plaintiff will suffer no prejudice from dismissal in this court as he may relitigate his state claims in a state court (*see* New York CPLR § 205 (McKinney's).

In the decision of December 15, 1986, plaintiff's securities claims were summarily rejected on the basis of the finding that although Hack was misguided as to his lack of authority to make the secret 1976 exchange of properties, he had no scienter or intent to defraud Shlomchik or the partnership, but acted in good faith merely intending to preserve the tax shelter status of R 103 (662 F.Supp. at 374). Simply because this court determined in its prior decision that plaintiff failed to sustain his burden of proving the element of scienter or fraudulent intent in the exchange of properties, it does not follow that the securities claim in his complaint was "unsubstantial" for purposes of pendent jurisdiction over the state law claims. *See Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974); *Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536 (2d Cir.1989); *Mayer v. Oil Field Systems Corp.*, 803 F.2d 749, 756–57 (2nd Cir.1986); and *Hirsch v. duPont*, 396 F.Supp. 1214, 1229–30 (S.D.N.Y.1975), *aff'd*, 553 F.2d 750 (2d Cir.1977).

Shlomchik's securities law claims were not "constitutionally insubstantial" in the sense that they were frivolous or beyond controversy in light of prior decisions (*see Goosby v. Osser*, 409 U.S. 512, 518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36 (1973)) and his securities claims were vigorously pursued at trial and argued in plaintiff's post-trial brief. Further, plaintiff's causes of action are all predicated on a common nucleus of operative facts and intertwining occurrences, and should have been tried in a single judicial proceeding (*see United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176, 1183–84 (2d Cir.1974); and *Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800, 809–11 (2d Cir.1971).

In *United Mine Workers of America v. Gibbs, supra*, the Supreme Court observed:

Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a [federal] claim * * *, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." [footnote omit-

ted.] The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. [citation omitted.] The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole. [footnote omitted.]

383 U.S. at 725, 86 S.Ct. at 1138 (emphasis in original).

*Gibbs* further holds: the concept of pendent jurisdiction is not a matter of right, but rather for the exercise of discretion; it need not be exercised in every case where it found to exist; its justification lies in considerations of judicial economy, convenience and fairness to the litigants; if state law claims substantially predominate (as in the instant case), the state claims *may* be dismissed without prejudice and left for resolution to state tribunals; the question of power will ordinarily be resolved on the pleadings, but the issue whether pendent jurisdiction was properly assumed is one which remains open throughout the litigation; dismissal for lack of pendent jurisdiction may be merited even where the litigation has been completed; and if it appears to the court that the litigation is essentially a state law case, to which a federal claim is only an appendage, the state claims *may* fairly be dismissed. *Id.*, at 726–27, 86 S.Ct. at 1139–40.

In complete fairness to defendants' challenge to plaintiff's claim of pendent jurisdiction, *Gibbs* leave little doubt that the overwhelmingly preponderate state law aspects of this case push the concept of pendent jurisdiction close to its limits and impose on federal jurisdiction. *See Laird v. Bd. of Trustees of Inst. of Higher Learn,* 721 F.2d 529 (5th Cir.1983); *Myers v. Am. Leisure Time Enterprises, Inc.,* 402 F.Supp. 213 (S.D.N.Y.1975), *aff'd without op.,* 538 F.2d 312 (2d Cir.1976). Significantly, in *Gibbs* as in the current case, the federal claims failed after trial and the only recovery allowed Gibbs was on a state claim. In that regard, the Court held: "We cannot confidently say, however, that the federal issues were so remote or played such a minor role at the trial that in effect the state claim only was tried." Based on the particular circumstances of *Gibbs*, the Court determined "that although it may be that the District Court might, in sound discretion, have dismissed the state claim, the circumstances show no error in refusing to do so." *Id.*, 383 U.S. at 728–9, 86 S.Ct. at 1140–41.

Here, the court concludes that although it has the discretion to dismiss this case, plainly it would not be an abuse of discretion to exercise pendent jurisdiction, as this court believes that the worthy goals of "judicial economy, convenience and fairness to litigants" enunciated in *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139, would be served by exercising pendent jurisdiction. *See also Enercomp, Inc.,* 873 F.2d at 545–46; and *Kavit*, 491 F.2d at 1180 n. 4. Consequently, finding there is pendent jurisdiction over plaintiff's state law claims, the court adheres to its prior overruling of defendants' motion for dismissal for lack of subject matter jurisdiction.

Accordingly, we reach the remaining issues to be resolved prior to entry of a final judgment concerning an appropriate award to plaintiff's counsel of expenses, including counsel fees, and the Magistrate's Report and Recommendations on her audit and accounting.

## MAGISTRATE'S REPORT AND RECOMMENDATION

Pursuant to the interlocutory order of January 27, 1987 the District Court Executive assigned the accounting and audit to Magistrate Sharon E. Grubin on February 6, 1987. The Magistrate submitted her five page Report and Recommendation to this court on December 6, 1990, to which defendants have interposed several objections. In short, defendants ask the court to reject the Report and Recommendations of the Magistrate in all respects or to remand the accounting to the Magistrate for reconsideration.

The court must accept the findings of a Special Master unless clearly erroneous. Fed.R.Civ.P. 53(e)(2). The court is unable to find any merit in defendants' objections, and in any event the court finds that none of the Magistrate's findings challenged by defendants are "clearly erroneous." *Id.*

Acceptance of defendants' objections would lead to a totally unfounded determination by this court that R 103 is indebted to Shawnee Equities (a corporation owned and controlled by Hack) in the amount of $220,821.72 for advances made to the partnership. Rejection of that result by the Magistrate was fully justified. Defendants' claim for the sum of $175,000 which assertedly was never paid to Shawnee (covering a fee to be paid by Mari Corp. to Shawnee for the services of Hack in arranging the initial wraparound mortgage transaction in which Mari was to be mortgagee), is found to be particularly frivolous.

Defendants' objection that the Magistrate failed to recognize the necessity for resorting to "third-party entities" and a three-cornered transaction to divert the payment of funds away from R 103 to preserve the appearance of a tax-free exchange, and thereby avoid the appearance of a sale and purchase transaction (which would have had adverse tax consequences, if of any relevance, is unsupported).

More, defendant contends that inasmuch as this court found in its decision of December 15, 1986 (662 F.Supp. at 369) that Z & L (through their affiliate Mari Corp.) paid Hack $89,242.74 on the Mari Corp. note to R 103 in the amount of $168,750 (which payment satisfied half the amount due on the mortgage taking into account the unpaid accrued interest, as well as unpaid principal), the Magistrate inconsistently found that Hack failed to credit or pay over to R 103 that sum, or otherwise account to the partnership for the $89,242.74 payment to him by Z & L (Report, at p. 3–4). The court's finding that Z & L paid Hack on the Mari Corp. mortgage note, obviously does not preclude a correct finding by the Magistrate in her accounting that Hack failed to pay over that sum to R 103. Defendants' claimed inconsistency is specious.

Defendants' other objections to the Report and Recommendation have been reviewed and are also found to be entirely without merit. Accordingly, the court adopts in their entirety the Magistrate's findings, Report and Recommendation of December 6, 1990 and her recommendation to award Shlomchik $43,421.02 on behalf of R 103.

## EXPENSES, INCLUDING COUNSEL FEES

■ Plaintiff's counsel at the various stages of this litigation (Lewis A. Grafman & Associates (previously known as Busch & Schramm); Busch, Grafman & von Dreusche; Busch, Grafman, von Dreusche & Carey; and Grafman & von Dreusche) seek an award of counsel fees and expenses. The fee application is hotly contested in the four extensive briefs submitted by the parties, citing numerous precedents for their respective positions, with attached and accompanying voluminous supporting documentation.

The pertinent considerations bearing on fixing a reasonable award of attorneys' fees, whether in the context of a "fee-shifting statute" or in the "equitable fund" context, are multifaceted, complex, have been exhaustively considered and addressed by the courts, and fee applications have in some instances been litigated in the trial and appellate courts almost to the degree involved in the principal actions. *See e.g., Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987); *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Wells v. Bowen,* 855 F.2d 37, 434 (2d Cir.1988); *Miele v. New York State Teamsters Conference Pension & Retirement Fund,* 831 F.2d 407, 408–09 (2d Cir.1987); *In re "Agent Orange" Product Liability Litigation,* 818 F.2d 226 (2d Cir.1987); *Donnell v. United States,* 682 F.2d 240 (D.C.Cir. 1982), *cert. denied,* 459 U.S. 1204, 103 S.Ct.

1190, 75 L.Ed.2d 436 (1983); *Detroit v. Grinnell Corp.,* 560 F.2d 1093 (2d Cir. 1977); *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Seigal v. Merrick,* 619 F.2d 160 (2d Cir.1980); *Kronfeld v. Transworld Airlines, Inc.,* 129 F.R.D. 598 (S.D.N.Y.1990); *Lenihan v. New York,* 640 F.Supp. 822 (S.D.N.Y.1986); *Blatt v. Dean Witter Reynolds Intercapital, Inc.,* 566 F.Supp. 1294 (S.D.N.Y.1983), *aff'd,* 732 F.2d 304 (2d Cir.1984); *Housler v. First National Bank,* 524 F.Supp. 1063 (E.D.N.Y.1981); *Mesh v. Goldfield Corp.,* 60 F.R.D. 595 (S.D.N.Y.1973); and *Whittemore v. Sun Oil Co.,* 58 F.R.D. 624 (S.D.N.Y.1973). The Report of the Special Master adopted in its entirety by Judge Kimba M. Wood and attached as an appendix to her memorandum opinion and order in *Kronfeld, supra,* is especially thorough and illuminating as to the current state of the law respecting counsel fees in a common fund situation. 129 F.R.D. at 599–621.

In the current fee application, the plethora of arguments raised by the parties in their lengthy principal and reply legal memoranda, would indicate that this matter has indeed developed into a major case in itself, or so called "satellite litigation." However, the Supreme Court has admonished that "[a] request for attorneys' fees should not result in a second major litigation." *Hensley,* 461 U.S., at 437, 103 S.Ct., at 1941. With the foregoing admonition in mind, the court will attempt to succinctly address plaintiff's fee application and the objections of defendants that warrant discussion.

Pursuant to New York Partnership Law, § 115–a(5) and paragraph 9 of this court's interlocutory order of April 24, 1987, plaintiff's counsel seek an award of attorneys' fees in the sum of $156,986.20 and expense disbursements of $8,310.35 for services and costs from 1982 to the filing of the application. The complex and protracted nature of this litigation is readily apparent from the court's initial opinion of December 15, 1986 as supplemented by the within memorandum.

Plaintiff's counsel represent that the requested fee of $156,986.20 was calculated by using the so-called "lodestar" formula (in which the usual basic factors or criteria for fixing fees are considered, *ie.,* the number of hours reasonably expended are multiplied by the hourly rate normally charged for equivalent work by similarly skilled attorneys in the area where the district court sits), resulting in fees of $112,133, and then adjusting such lodestar amount upward with a "multiplier" of 1.40 (reflecting factors that the court in the exercise of discretion regards as justifying an enhancement of the lodestar figure, *i.e.,* the contingent nature of the fee agreement or uncertainty of being paid for services, the exceptional degree of success or benefits achieved, delays in receiving compensation, etc.).

Further, plaintiff's counsel requests that the fees and expenses be awarded *in addition* to the amount recovered by plaintiff on behalf of the partnership in the derivative causes of action, and thus plaintiff seeks to have his fees and expenses paid out of the pockets of defendants.

In support of their application for an award of expenses and fees, plaintiff's counsel has submitted several documents, including highly detailed contemporaneous time sheets as to the dates, time expended, services performed, hourly rates and disbursements (*see, New York Ass'n. for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147–48, 1154 (2d Cir.1983)), an affidavit by Ms. von Dreusche, with the participating attorneys' *curriculum vitae* and other attachments, an affidavit by Robert P. Knapp, Jr., a member of the bar of the State of New York since 1949, concerning lawyers' billing rates in New York City and contingent fee arrangements, and a copy of the twenty-five percent contingent fee agreement entered into with Shlomchik in July 1984. The retainer agreement stipulates that counsel may apply to the court for a fee award in excess of 25%, which if granted, will be accepted in lieu of the 25% contingent fee payable by Shlomchik.

First, counsel's request that its usual billing rate of $75.00 to $150.00 per hour

for the years 1982 to 1990 be increased by $25.00 per hour to reflect the higher differential in billing rates between suburban Philadelphia and New York City, where this litigation was conducted, is reasonable and is granted. *See In re "Agent Orange" Product Liability Litigation*, 818 F.2d at 232, citing *Donnell, supra; Pickman v. Dole*, 671 F.Supp. 982 (S.D.N.Y.1987); *Perez v. Velez*, 629 F.Supp. 734 (S.D.N.Y.1985); *Saylor v. Bastedo*, 594 F.Supp. 371 (S.D.N.Y.1984); *Meschino v. IT & T Corp.*, 661 F.Supp. 254, 261 (S.D.N.Y.1987); and *Lenihan, supra*.

■ The court finds that plaintiff's counsel are experienced litigators, that their services were professionally and skillfully performed and they have conducted themselves in accord with the best traditions of the profession. (Parenthetically, the same may be said for defendants' counsel.) The lodestar figure of $112,133.00 submitted by plaintiff's counsel, predicated on the time expended multiplied by the hourly rate, is justified by their submissions to the court and is acceptable. Further, under all the facts and circumstances and in view of the background of this litigation, the court will be liberal and award to plaintiff's counsel their fees and expenses going back to 1982—two years prior to the filing of the complaint in this action, and two and one-half years prior to the contingent fee agreement of July 1984. The amount of fees and expenses incurred by plaintiff (and indeed also by defendants) surely reflect to a high degree the tenacity displayed by Shlomchik's counsel from their engagement in 1982 in the face of able adversary counsel who bitterly fought with "tooth and nail" for their clients at every step of the proceedings, with significant success in minimizing defendants' liabilities.

■ Second, we turn to plaintiff's request that the lodestar figure be enhanced by an appropriate multiplier to reflect the contingent nature of counsel's compensation, the factor of delay, the excellent quality of counsel's representation and the results obtained. Defendants, on the other hand, insist that plaintiff's fee application

be reduced (if not totally rejected), because it is grossly excessive in comparison to the benefits or results obtained for the partnership and otherwise is unjustified. Upon full consideration of the suggested multiplier factors, defendants' numerous objections to the multiplier aspect of plaintiff's application, and in the exercise of discretion, the multiplier is denied. Lodestar enhancements or multipliers are the exception rather than the rule and are unwarranted in this case. *See Pennsylvania v. Delaware Valley Citizens, supra; In re "Agent Orange,"* 818 F.2d at 234, citing *Blum*, 465 U.S., at 889, 104 S.Ct., at 1544.

■ Third, according to defendants, the application is fatally flawed because it fails to distinguish between compensable and noncompensable services (*i.e.*, services and expenses related to the individual vs. the derivative causes of action), is insufficiently detailed and documented to permit such distinction by the court, and because plaintiff's counsel should not be awarded fees or expenses having any connection to any of the dismissed causes of action or its other unsuccessful efforts in this case (*i.e.*, denied class action certification later abandoned, frivolous motions to compel discovery, the Rule 54(d) certification, withdrawn interlocutory appeal, irrelevant expert appraisal testimony, etc). Defendants' objections are overruled.

Section 115–a(5), unlike the fee-shifting statutes relied on by defendants that authorize an award of counsel fees to a "prevailing" party, authorizes, without qualification, an award of reasonable fees and expenses whether the plaintiff's action was "successful, in whole *or in part, or* if *anything* was received by the plaintiff * * * as a result of a judgment" (emphasis added). *See also, Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940 (discussing fee reduction for unsuccessful efforts); and *Seigal*, 619 F.2d at 165 (in derivative action, deduction from lodestar figure for work on legal theories that were not frivolous but proved unfruitful was disapproved).

■ Fourth, defendants strenuously contend that the application of plaintiff's counsel for fees and expenses to be paid by

defendants *in addition* to an award to Shlomchik on behalf of R 103 must be denied because it ignores the requirement of New York Partnership Law, § 115–a(5) that expenses and fees be paid *out of the award* to the partnership. The court agrees.

Section 115–a(5), so far as pertinent to the issue raised by defendants as to whether the fees and expenses must be paid out of the award to R 103, reads: "If the action on behalf of the limited partnership was successful, in whole or in part * * * the court may award the plaintiff * * * reasonable expenses, including reasonable attorneys' fees, and shall direct him or them to account to the partnership for *the remainder of the proceeds so received by him or them* " (emphasis added).

The issue of whether the foregoing statute authorizes the court to award expenses and counsel fees to be paid by defendants *in addition* to damages awarded the partnership has apparently not been squarely decided by the New York courts. Fortunately, as to that question, the statute's language, policy and purpose appear to be exceedingly clear, and it is difficult to understand how plaintiff's counsel could have been confused as to the source of the fees and expenses.

The court notes the clear statutory directive requiring plaintiff to account to the partnership for *the remainder of the proceeds* received by him in the action. The ordinary meaning of the term "remainder" is: "what is left after something is taken away." *Webster's New International Dictionary*, Second Ed.1953, Unabridged, p. 2107. Even in the mathematics context, the term "remainder" refers to "[t]hat which is left after subtraction or deduction." *Id.* Hence, the statute's reference to plaintiff's duty to account to the partnership for the "remainder" of the proceeds, makes little sense unless the expenses and attorneys' fees awarded are disbursed by the plaintiff to his counsel *out of the fund recovered by the partnership.*

With regard to stockholder derivative suits, which are analogous to derivative suits by limited partners on behalf of limited partnerships, the courts have consistently held that the award of counsel fees must be carved out of the recovery by the corporation, and that the successful plaintiff may not impose such fees on the losing party. *See Lewis v. S.L. & E., Inc.*, 746 F.2d 141, 143 (2d Cir.1984); *Lewis v. S.L. & E., Inc.*, 629 F.2d 764, 773 (2d Cir.1980); *Jones v. Uris Sales Corp.* 373 F.2d 644, 648 (2d Cir.1967); and *Glenn v. Hoteltron Systems, Inc.*, 74 N.Y.2d 386, 547 N.Y.S.2d 816, 819–820, 547 N.E.2d 71, 74–75 (1989). Section 115–a(5) tracks the virtually identical language and effect of the New York Business Corporation Law, § 626(e). In view of the nearly identical language in the partnership and corporate statutes pertaining to expenses and attorneys fees, and the obvious and recognized parallel between derivative actions on behalf of limited partnerships and stockholder derivative actions (*See* Leg.Doc. No. 65(B), *Report, New York Law Revision Comm.*, 2 N.Y. Session Laws '68 (McKinney's) 2228–9), different treatment of an award of expenses and fees in the two types of derivative actions would be completely nonsensical.

In sum, § 115–a(5) does not authorize an award to plaintiff's counsel of expenses and fees *in addition* to an award of damages to plaintiff on behalf of the partnership. Rather, the successful plaintiff (the limited partner prosecuting the derivative action on behalf of the partnership) may recover his reasonable expenses and counsel fees only *out of the award to the partnership.* Hence, plaintiff's application for an award of expenses and fees under New York Partnership Law, § 115–a(5) is granted, but shall be paid only out of the award of damages and interest to plaintiff on behalf of the partnership. As required by § 115–a(5), the court directs that plaintiff "account to the partnership for the remainder of the proceeds so received by him."

Plaintiff's request for an award of fees and expenses to be charged to defendants as costs on the ground that defendants have been guilty of fraudulent, groundless and oppressive or vexatious conduct is denied. In *Sternberg v. Citicorp. Credit*

746

*Services, Inc.,* 110 Misc.2d 804, 442 N.Y.S.2d 1017 (1981), where a similar application was made, the court "determine[d] that, consistent with traditional practice, the judgment fund and its accrued interest is the appropriate source for the payment of the attorneys' fees." *Id.,* 442 N.Y.S.2d at 1020.

 Finally, the court is advised by plaintiff that including prejudgment interest (which, obviously, continues to accrue until a final judgment is entered), the award to R 103 currently stands well in excess of $450,000. Fundamentally, in a derivative action where the successful party's counsel fees are to be paid out of the common fund recovered for the entity, the fees awarded must have some reasonable relationship to the benefit or results obtained by the action. While a percentage based calculation is not used in this case, it may be observed that as a percentage of the total fund awarded, the attorneys' fee approved herein of $112,133 represents approximately 25% of $450,000, a percentage well within the range of 20 to 50 percent considered reasonable in the *Kronfeld* analysis, 129 F.R.D. at 602 (citing cases).

### CONCLUSION

Excepting for the holding with respect to diversity jurisdiction, the court adheres to the opinion, findings of fact and conclusions of law issued on December 15, 1986 and the interlocutory order of April 23, 1987. The foregoing are, of course, to be deemed amended by this opinion regarding the jurisdictional basis for this action and adoption of the Magistrate's Report and Recommendation of an award of $43,-421.02. Therefore, plaintiff shall recover on behalf of R 103 the sum of $203,332.87, to which shall be added prejudgment interest in conformity with the rates and starting dates specified in the interlocutory order; *plus* the sum of $43,421.02 on the Magistrates' recommended accounting award, to which shall be added prejudgment interest in conformance with the rates and starting date specified in paragraph 5 of the interlocutory order as applicable to the award of $89,242.74. Plain-

tiff's counsel are awarded the amount of $112,133 for attorneys' fees and the sum of $8,310.35 for expenses.

Counsel for the parties are directed to settle a final judgment on 15 days notice consistent with the foregoing opinion, findings and conclusions.